**FILED**

MAY 1 4 2008

Clerk, U.S. District and
Bankruptcy Courts

IN THE UNITED STATES DISTRICT COURT
FOR THE
JUDICIAL DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ARISTEDE M. JOHNSON, | § § § | Case: 1:08-cv-00850 |
| Petitioner/Plaintiff, | § § § § | Assigned To : Walton, Reggie B. Assign. Date : 5/14/2008 Description: Habeas Corpus/2255 |
| vs. | § § | |
| MICHAEL MUKASEY, ATTORNEY GENERAL FOR THE "UNITED STATES OF AMERICA," | § § § § | JUDICIAL NOTICE RULE 201(d) |
| and | § § | |
| HARLEY G. LAPPIN, DIRECTOR FOR THE BUREAU OF PRISONS, | § § § | |
| Respondent(s)/Defendant(s). | § § § | |

**COMES NOW**, Aristede M. Johnson, in want of counsel, pro-se, accused in the above captioned cause, and as Petitioner for the instant motion to request **"Judicial Notice"** in the nature of Rule 201(d) of the Federal Rules of Evidence, shows this court as follows:

1.

That the undersigned requests the court to take "Judicial Notice" of a certain excerpt from the United States Government's publication which is specifically "The Report of the Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the [several sovereign] states."
////////////

2

2.

That the undersigned requests the court to take "Judicial Notice" of the statutes of the State of Texas, without limitations, at Chapter 1 §1, et. seq.

3.

That the undersigned requests the court to take "Judicial Notice" without limitations, to Article I, Section 8, Clause 17, in amendment to the Constitution of the United States.

4.

That the undersigned requests the court to take "Judicial Notice" of the Government's charging instruments whereon, the government fails to describe a 'locus in quo,' wherein the alleged violation conduct of the undersigned was committed; which is within the legislative, territorial or admiralty jurisdiction of the Federal United States, corporation (28 U.S.C. §3002 (15)(A)).

5.

That the undersigned requests the court to take "Judicial Notice" of the self-evident fact that the government's charging instrument(s) fail to allege or charge the undersigned with an alleged violation of the Federal Commerce Clause which is in he sine qua non to the legitimate application of the federal statutory provisions under which the undersigned was charged, with out nexus to the former, there can no operation of the latter.

6.

That the undersigned submits the following for judicial review by the court, citing from the government's report entitled: Jurisdiction Over Federal Areas Within The States, subtitled; "Report of the Interdepartmental Committee for the Study of Jurisdiction Over Federal Areas within the States."

7.

The Constitution of the United States at Article I, Section 8, Clause 17:

> "The Congress shall have power...to exercise exclusive Leg-
> islation in all cases whatsoever, over such district (not
> exceeding ten miles square) as may, be cession of part-
> icular states, and the acceptance of Congress, become the
> feat of the Government of the United States, and to exercise
> like authority over all places purchased by the consent of

the legislature of the State in which the same shall be,
for the erection of forts, magazines, arsenals, dock-yards
and other needful buildings, and to make all laws which
shall be necessary and proper for carrying into execution
the foregoing powers and all other powers vested by this
Constitution in the Government of the United States, or in
any department or office thereof....


    The significance of the foregoing in the above styled action is
the purported plaintiff herein cannot demonstrate that the court has
jurisdiction to adjudicate the matter.  In support of the said arg-
ument the undersigned refers the court to a publication entitled
JURISDICTION OVER FEDERAL AREAS WITHIN THE STATES, and subtitled Report
of the Interdepartmental Committee for the Study of Jurisdiction over
Federal Areas within the States, which was published in two volumes
by the United States printing office.  Excerpts from the said public-
ation are as follows:


/////

"The White House,
Washington, April 27, 1956.

Dear Mr. Attorney General:

I am herewith returning to you, so that it may be published and receive the widest possible distribution among those interested in Federal real property matters, Part I of the Report of the Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States. I am impressed by the well-planned effort which went into the study underlying this report and by the soundness of the recommendations which the report makes.

It would seem particularly desirable that the report be brought to the attention of the Federal administrators of real properties, who should be guided by it in matters related to legislative jurisdiction, and to the President of the Senate, the Speaker of the House of Representatives, and appropriate State officials, for their consideration of necessary legislation. I hope that you will see to this. I hope, also, that the General Services Administration will establish as soon as may be possible a central source of information concerning the legislative jurisdictional status of Federal properties and that that agency, with the Bureau of the Budget and the Department of Justice, will maintain a continuing and concerted interest in the progress made by all Federal agencies in adjusting the status of their properties in conformity with the recommendations made in the report.

The members of the Committee and the other officials, Federal and State, who participated in the study, have my appreciation and congratulations on this report. I hope they will continue their good efforts so that the text of the law on the subject of legislative jurisdiction which is planned as a supplement will issue as soon as possible.

Sincerely,
Dwight D. Eisenhower.

The Honorable Herbert Brownell, Jr.,
The Attorney General, Washington, D. C."

and

## LETTER OF ACKNOWLEDGMENT

The White House
. Washington, July 8, 1957.

Dear Mr. Attorney General:

I have taken note of the final report (Part II) which you transmitted to me, rendered by the Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States. It is my understanding that the report is to be published and distributed, for the purpose of making available to Federal administrators of real property, Federal and State legislators, the legal profession, and others, this text of the law of legislative jurisdiction in these areas.

In view of the fact that the work of the Committee is completed, and since other departments and agencies of the Government now have clear direction for turning this work into permanent gains in improved Federal-State relations, the Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States is hereby dissolved.

Chairman Perry W. Morton and the members of this Committee have my congratulations and sincere appreciation of their service to our country in bringing to light the facts and law in this much neglected field. This monumental work, culminating three years of exhaustive effort, lays an excellent foundation for allocating to the States some of the functions which under our Federal-State system should properly be performed by State Governments.

Sincerely,
Dwight Eisenhower

The Honorable Herbert Brownell, Jr.,
The Attorney General,
Washington, D. C.

## LETTER OF TRANSMITTAL

Office of the Attorney General,
Washington, DC, June 28, 1957.

Dear Mr. President:

The Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States now has submitted the second, and final, part of its report, a text of the law of legislative jurisdiction over such areas.

This exhaustive and analytical exposition of the law in this hitherto little explored field is a valuable supplement to the first part of the report, the compilation of facts, with recommendations, which received your commendation in April 1956, and constitutes a major addition to legal bibliography.

Together, the two parts of this Committees report and the full implementation of its recommendations will provide a basis for reversing in many areas the swing of "the pendulum of power" * * * from our states to the central government, to which you referred in your address to the Conference of State Governors on June 25, 1957.

The excellence of the work of the Committee reflects great credit upon its Chairman and members. Also especially noteworthy is the splendid assistance which the Committee received from the attorneys general of the several States, the general counsels of Federal agencies, and other State and Federal officials.

With the submission of this second part of its report the Committee has completed its work and recommends that it be dissolved. Since the Departments and other permanent agencies of the Federal Government now can carry out directions which you have issued based upon the work of the Committee, I join in this recommendation.

Respectfully,
Herbert Brownell, Jr.

## LETTER OF SUBMISSION

*INTERDEPARTMENTAL, COMMITTEE FOR THE STUDY OF OVER FEDERAL AREAS WITHIN THE STATES JURISDICTION*
June 17, 1957.

Dear Mr. Attorney General:

    With the encouragement of the President, the understanding aid of you and the heads of the other Federal agencies represented on the Committee, and the invaluable assistance of the Attorneys General of the several States and of the principal law officers of nearly all Federal agencies, the Committee now has completed, and herewith submits, the final portion of its report, subtitled "Part II, A Text of the Law of Legislative Jurisdiction."

    This "Part II" supplements the portion of the Committee's report which you transmitted to the President on April 27, 1956. With its submission the work assigned to the Committee has been completed, and it is recommended that the Committee be dissolved.

    Respectfully submitted,
    PERRY W. MORTON,
    Assistant Attorney General (Chairman).

    ROBERT DECHERT,
    General Counsel, Department of Defense (Vice Chairman).

    HENRY H. PIKE,
    Associate General Counsel, General Services Administration (Secretary).

    ARTHUR B. FOCKE,
    Legal Advisor, Bureau of the Budget.

    ELMER F. BENNETT.
    Solicitor, Department of the Interior.

    ROBERT L. FARRINGTON,
    General Counsel, Department of Agriculture.

    PARKE M. BANTA,
    General Counsel, Department of Health, Education, and Welfare.

    GUY H. BIRDSALL,
    General Counsel, Veterans. Administration.

## PREFACE

The Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States was formed on December 15, 1954, on the recommendation of the Attorney General approved by the President and the Cabinet The basic purpose for which the Committee was founded was to find means for resolving the problems arising out of jurisdictional status of Federal lands. Addressing itself to this purpose, the Committee; with assistance from all Federal agencies interested in the problems (a total of 33 agencies), from State Attorneys General, and from numerous other sources, prepared a report entitled Jurisdiction over Federal Areas Within the States Part I, The Facts and Committee Recommendations. This report, approved by the President on April 27, 1956, set out the findings of the Committee and recommended changes in Federal and State law, and in Federal agencies' practices, designed to eliminate existing problems arising out of legislative *jurisdiction.* It included two appendices.

The Committees research involved a general survey of the jurisdictional status of all federally owned real property in the 48 States, and a detailed survey of the status of individual such properties in the States of Virginia, Kansas, and California. These three named States were selected as containing Federal real properties representative of such properties in all the States. Information was procured concerning the practices and problems related to legislative jurisdiction of the 23 Federal Agencies controlling real property, and of the advantages and disadvantages of the several legislative jurisdictional statues for the various purposes for which federally owned land is used. This information is reflected and analyzed in the several chapters of Part I of the report, and is summarized in Appendix A of the same part.

The Committees study included a review of the policies, practices, and problems of the 48 States related to legislative jurisdiction. Information concerning these matters similarly is reflected and analyzed in various portions of Part I of the report, with Chapter V of the part being entirely devoted to the laws and problems of States related to legislative jurisdiction. Also, the texts of State (and Federal) constitutional provisions and statutes related to jurisdiction in effect as of December 31, 1955, are gathered in appendix B of Part I.

The major conclusions of the Committee, set out in Part I of - the report, which, of course, are applicable only to the 48 States to which the Committees study extended, and do not apply to present Territories or the District of Columbia, are to the effect that in the usual case the Federal Government should not receive or retain any of the States' Legislative Jurisdiction within federally owned areas, that in some special cases (where general law enforcement by Federal authorities is indicated) the Federal Government should receive or retain legislative jurisdiction only concurrently with the States, and that in any case the Federal Government should not receive or retain any of the States' legislative jurisdiction with respect to taxation, marriage, divorce, descent and distribution of property, and a variety of other matters, specified in the report, which are ordinarily the subject of State control.

The conclusions reached by the Committee were, of course, made only after an appraisal of the facts adduced during the study in the light of applicable law, including the great body of decisions handed down by courts and opinions rendered by governmental legal officers Federal and State interpretative of situations affected by legislative jurisdiction

Recommendations made by the Committee, based on the conclusions indicated above and in certain other detail, if adopted, would constitute the policy of the Executive branch of the

‹

Federal Government, and are being implemented by Federal agencies to the extent possible under existing law. However, full implementation of these recommendations must await the enactment of certain suggested Federal and State legislation

In the course of its study the Committee ascertained the existence of serious lack of legal bibliography on the subject-matter of its interest. With the concurrence of the Attorney General of the United States and the encouragement of the President, it has proceeded with the publication of this Part II of its report, a compilation of the court decisions and legal opinions it weighed in the course of its study of the subject of Legislative jurisdiction.

## LAW OF LEGISLATIVE JURISDICTION

Legal Problems many. -- In view of the vastness of Federal real estate holdings, the large variety of activities conducted upon them, and the presence on many areas of resident employees and other persons, it is to be expected that many legal problems will arise on or with respect to these holdings. In addition to the problems normally encountered in administering and enforcing Federal laws, complicated by occasional conflict with over lapping State laws, the ownership and operation by the Federal Government of areas within the States gives rise to a host of legal problems largely peculiar to such areas. They arise not only because of the fact of Federal ownership and operation of these properties, but also because in numerous instances the Federal Government has with respect to such properties a special jurisdiction which excludes, in varying degrees, the Jurisdiction of the State over them, and which in other instances is, to varying extents, concurrent with that of the State.

## FEDERAL POSSESSION OF EXCLUSIVE JURISDICTION

By constitutional consent. -- This special jurisdiction which is often possessed by the United States stems, basically, out of Article I, Section 8, Clause 17, of the Constitution of the United States, which provides, in legal effect, that the Federal Government shall have exclusive legislative jurisdiction over such area, not exceeding 10 miles square, as may become the seat of government of the United States, and like authority over all places acquired by the Government, with the consent of the State involved, For various Federal purposes. It is the latter part of the clause, the part which has been emphasized, with which this study is particularly concerned. There is a general public awareness of the fact that the United States Government exercises all governmental authority over the District of Columbia, by virtue of power conferred upon it by a clause of the Constitution. There is not the same awareness that under another provision of this same clause the United States has acquired over several thousand areas within the States some or all of those powers, judicial and executive as well as legislative, which under our Federal-State system of government ordinarily are reserved to the States.

By Federal reservation or State cession. For many years after the adoption of the Constitution, Federal acquisition of State-type legislative jurisdiction occurred only by direct operation of Clause 17. The clause was activated through the enactment of State statutes consenting to the acquisition by the Federal Government either of any land, or of specific tracts of land, within the State. In more recent years the Federal Government has in several instances made reservations of jurisdiction over lands in connection with the admission of State into the Union. A third means for transfer of legislative jurisdiction to the

has come into considerable use, whereby in a general or special statute a State makes a cession of jurisdiction to the Federal Government. Courts and other legal authorities have distinguished at various times between Federal legislative jurisdiction derived, on the one hand, directly from operation of Clause 17, and, on the other, from a Federal reservation or a State cession of jurisdiction. In the main, however, the characteristics of a legislative Jurisdiction status are the same no matter by which of the three means the Federal Government acquired such status. Differences in these characteristics will be specially pointed out in various succeeding portions of this work.

Governmental Power merged in Federal Government. -- Whether by operation of Clause 17, by reservation of jurisdiction by the United States, or by cession of jurisdiction by States, in many areas all governmental authority (with recent exceptions which will be noted) has been merged in the Federal Government, with none left in any State. By this means some thousands of areas have become Federal islands, sometimes called "enclaves,.., in many respects foreign to the States in which they are situated. In general, not State but Federal law is applicable in an area under the exclusive legislative jurisdiction of the United States, for enforcement not by State but Federal authorities, and in many instances not in State but in Federal courts. Normal authority of a State over areas within its boundaries and normal relationships between a State and its inhabitants, are disturbed, disrupted, or eliminated, as to enclaves and their residents.

The State no longer has the authority to enforce its criminal laws in areas under the exclusive jurisdiction of the United States. Privately owned property in such areas is beyond the taxing authority of the State. It has been generally held that residents of such areas are not residents of the State, and hence not only are not subject to the obligations of residents of the State but also are not entitled to any of the benefits and privileges conferred by the State upon its residents. Thus, residents of Federal enclaves usually cannot vote, serve on juries, or run for office. They do not, as a matter of right, have access to State schools, hospitals, mental institutions, or similar establishments. The acquisition of exclusive jurisdiction by the Federal Government renders unavailable to the residents of the affected areas the benefits of the laws and judicial and administrative processes of the State relating to adoption, the probate of wills and administration of estates, divorce, and many other matters. Police, fire-fighting, notarial, coroner, and similar services performed by or under the authority of a State may not be rendered with legal sanction, in the usual case, in a Federal enclave.

## EXERCISE OF EXCLUSIVE FEDERAL JURISDICTION

Legislative authority little exercised. -- States do not have authority to legislate for areas under the exclusive legislative Jurisdiction of the United States, but the Congress has not legislated for these areas either,, except in some minor particulars.

Exercise as to crimes. -- With respect to crimes occurring within Federal enclaves the Federal Congress has enacted the Assimilative Crimes Act, which adopts for enclaves, as Federal law, the State law which is in effect at the time the crime is committed. The Federal Government also has specifically defined and provided for the punishment of a number of crimes which may occur in Federal enclaves, and in such cases the specific provision, of course supersedes the Assimilative Crimes Act.

Exercise as to other matters. -- Federal legislation has not been enacted authorizing the

extension to Federal enclaves of the workmen's compensation and unemployment compensation laws of the States within the boundaries of which the enclaves are located. The Federal Government also has provided that State law shall apply in suits arising out of the death or injury of any person by the neglect or wrongful act of another in an enclave. It has granted to the States the right to impose taxes on motor fuels sold on Government reservations, and sales, use, and income taxes on transactions or uses occurring or services performed on such reservations; it has allowed taxation of leasehold interests in Federal property including property located on Federal enclaves; and it has retroceded to the States jurisdiction pertaining to the administration of estates of residents of Veterans. Administration facilities. This is the extent of Federal legislation enacted to meet the special problems existing on areas under the exclusive legislative jurisdiction of the United States.

## RULE Of INTERNATIONAL LAW

Extended by courts to provide civil law. -- The vacuum which would exist because of the absence of State law or Federal legislation with respect to civil matters in areas under Federal exclusive legislative jurisdiction has been partially filled by the courts, through extension to these areas of a *Rule of International Law* that when one sovereign takes over territory of another the laws of the original sovereign in effect at the time of the taking which are not inconsistent with the laws or policies of the second continue in effect, as laws of the succeeding sovereign, until changed by that sovereign.

## ACQUISITION OF LEGISLATIVE JURISDICTION
## THREE METHODS FOR FEDERAL ACQUISITION OF JURISDICTION

Constitutional Consent. -- The Constitution gives express recognition to but one means of Federal acquisition of legislative jurisdiction -- by State consent under Article I, Section 8, Clause 17. The debates in the Constitutional Convention and State ratifying conventions leave little doubt that both the opponents and proponents of Federal exercise of exclusive legislative jurisdiction over the seat of government were of the view that a constitutional provision such as Clause 17 was essential if the Federal Government was to have such jurisdiction. At no time was it suggested that such a provision was unessential to secure exclusive Legislative jurisdiction to the Federal Government over the seat of government. While, as has been indicated in the preceding chapter, little attention was given in the course of the debates to Federal exercise of exclusive legislative jurisdiction over areas other than the seat of government, it is reasonable to assume that it was the general view that a special constitutional provision was essential to enable the United States to acquire exclusive legislative jurisdiction over any area. Hence, the proponents of exclusive legislative jurisdiction over the seat of government and over federally owned areas within the States defended the inclusion in the Constitution of a provision such as Article I, Section 8, clause 17. And in United States v. Railroad Bridge Co., 27 Fed. Cas. 686, 693, No. 16,114 (C. C. N. D. III., 1855), Justice McLean suggested that the Constitution provided the sole mode for transfer of jurisdiction, and that if this mode is not pursued no transfer of jurisdiction can take place

State cession. -- However, in Fort Leavenworth R. R. v. Lowe 114 U. S. 525 "1841., the United States Supreme Court sustained the validity of an act of Kansas ceding to the

United States legislative jurisdiction over the Fort Leavenworth military reservation, but reserving to itself the right to serve criminal and civil process in the reservation and the right to tax railroad, bridge, and other corporations, and their franchises and property on the reservation. In the course of its opinion sustaining the cession of legislative jurisdiction, the Supreme Court said (p. 540):

> We are here met with the objection that the Legislature of a State has no power to cede away her jurisdiction and legislative power over any portion of her territory, except as such cession follows under the Constitution from her consent to a purchase by the United States for some one of the purposes mentioned. If this were so, it could not aid the railroad company; the jurisdiction of the State would then remain as it previously existed. But aside from this consideration, it is undoubtedly true that the State, whether represented by her Legislature, or through a convention specially called for that purpose, is in competent to cede her political jurisdiction and legislative authority over any part of her territory to a foreign country, without the concurrence of the general government. The jurisdiction of the United States extends over all the territory within the States, and, therefore, their authority must be obtained, as well as that of the State within which the territory is situated, before any cession of sovereignty or political jurisdiction can be made to a foreign country. * * * In their relation to the general government, the States of the Union stand in a very different position from that which they hold to foreign governments. Though the jurisdiction and authority of the general government are essentially different from those of the State, they are not those of a different country; and the two, the State and general government, may deal with each other in any way they may deem best to carry out the purposes of the Constitution. It is for the protection and interests of the States, their people and property, as well as for the protection and interests of the people generally of the United States, that forts, arsenals, and other buildings for public uses are constructed within the States. As instrumentalities for the execution of the powers of the general government, they are, as already said, exempt from such control of the States as would defect or impair their use for those purposes; and if, to their more effective use, a cession of legislative authority and political jurisdiction by the State would be desirable, we do not perceive any objection to its grant by the Legislature of the State. Such cession is really as much for the benefit of the State as it is for the benefit of the United States.

Had the doctrine thus announced in Fort Leavenworth _R. R. v. Lowe_, supra, been known at the time of the Constitutional Convention, it is not improbable that Article I, Section 8, Clause 17, at least insofar as it applies to areas other than the seat of government, would not have been adopted. Cession as a method for transfer of jurisdiction by a State to the United States is now well established, and quite possibly has been the method of transfer in the majority of instances in which the Federal .......

Federal Reservation. – In Fort Leavenworth _R. R. v. Lowe_, supra, the Supreme Court approved a second method not specified in the Constitution of securing legislative jurisdiction in the United States. Although the matter was not in issue in the case the Supreme Court said (p. 540)

The land constituting the Reservation was part of the territory acquired in 1803 by cession from France, and, until the formation of the State of Kansas, and her admission into the Union, the United States possessed the rights of a proprietor, and had political dominion and sovereignty over it. For many years before that admission it had been reserved from sale by the proper authorities of the United States for military purposes, and occupied by them as a military post. The jurisdiction of the United States over it during this time was necessarily paramount. But in 1861 Kansas was admitted into the Union upon an equal footing with the original States, that is, with the same rights of political dominion and sovereignty, subject like them only to the Constitution of the United States. Congress might undoubtedly, upon such admission, have stipulated for retention of the political authority, dominion and legislative power of the United States over the Reservation, so long as it should be used for military purposes by the government; that is, it could have excepted the place from the jurisdiction of Kansas, as one needed for the uses of the general government. But from some cause, inadvertence perhaps, or over-confidence that a recession of such jurisdiction could be had whenever desired, no such stipulation or exception was made.

Almost the same language was used by the Supreme Court of Kansas in *Clay v. State*, 4 Kan. 49 (1866), and another suggestion - of judicial recognition of this doctrine is to be found in an earlier case in the Supreme Court of the United States, *Langford v. Montieth*, 102 U. S. 145 ( 1880), in which it was held that when an act of Congress admitting a State into the Union provides, in accordance with a treaty, that the lands of an Indian tribe shall not be a part of such State or Territory, the new State government has no jurisdiction over them. "The enabling acts governing the admission of several of the States provided that exclusive jurisdiction over certain areas was to be reserved to the United States" in view of these developments, an earlier opinion of the United States Attorney General indicating that a State legislature, as distinguished from a State constitutional convention, had to give the consent to transfer jurisdiction specified in the Federal Constitution (12 Ops. A. G. 428 (1868)), would seem inapplicable to a Federal reservation of jurisdiction.

Since Congress has the power to create States out of Territories and to prescribe the boundaries of the new States, the retention of exclusive legislative jurisdiction over a federally owned area within the State at the time the State is admitted into the Union would not appear to pose any serious constitutional difficulties.

No Federal Legislative Jurisdiction without consent cession, or reservation. -- It scarcely needs to be said that unless there has been a transfer of jurisdiction (1) pursuant to Clause 17 by a Federal acquisition of land with State consent, or (2) by cession from the State to the Federal Government, or unless the Federal Government has reserved jurisdiction upon the admission of the State, the Federal Government possesses no legislative jurisdiction over any area within a State, such jurisdiction being for exercise entirely by the State, subject to non-interference by the State with Federal functions, and subject to the free exercise by the Federal Government of rights with respect to the use, protection, and disposition of its property.

## NECESSITY OF STATE ASSENT TO TRANSFER OF JURISDICTION
## TO FEDERAL GOVERNMENT

Constitutional Consent —The Federal Government cannot, by unilateral action on its part, acquire legislative jurisdiction over any areas within the exterior boundaries of a State. Article I, Section 8, Clause 17, of the Constitution, provides that legislative jurisdiction may be transferred pursuant to its terms only with the consent of the legislature of the State in which is located the area subject to the jurisdictional transfer. As was indicated in Chapter II, the consent requirement of Article I, Section 8, Clause 17, was intended by the framers of the Constitution to preserve the States Jurisdictional integrity against Federal encroachment.

State cession or Federal reservation. -- The transfer of legislative Jurisdiction pursuant to either of the two means not spelled out in the Constitution likewise requires the assent of the State in which is located the area subject to the jurisdictional transfer. Where legislative jurisdiction is transferred pursuant to a State cession statute, the State has quite clearly assented to the transfer of legislative jurisdiction to the Federal Government, since the enactment of a State cession statute is a voluntary act on the part of the legislature of the State.

The second method not spelled out in the Constitution of vesting legislative jurisdiction in the Federal Government, namely, the reservation of legislative jurisdiction by the Federal Government at the time statehood is granted to a Territory, does not involve a transfer of legislative jurisdiction to the Federal Government by a State, since the latter never had jurisdiction over the area with respect to which legislative jurisdiction is reserved. While, under the second method of vesting legislative jurisdiction in the Federal *Government*, the latter may reserve such jurisdiction without inquiring as to the wishes or desires of the people of the Territory to which statehood has been granted, nevertheless, the people of the Territory involved have approved, in at least a technical sense, such reservation. Thus, the reservation of legislative jurisdiction constitutes, in the normal case, one of the terms and conditions for granting statehood, and only if all of the terms and conditions are approved by a majority of the voters of the Territory, or by a majority of the Territorial legislature, is statehood granted.

### NECESSITY OF FEDERAL ASSENT

Express Consent Required by R. S. 355.— Acquiescence, or acceptance, by the Federal Government, as well as by the State, is essential to the transfer of legislative jurisdiction to the Federal Government. When legislative jurisdiction is reserved by the Federal Government at the time statehood is granted, to a Territory, it is, of course, obvious that the possession of legislative jurisdiction meets with the approval of the Federal Government. When legislative jurisdiction is to be transferred by a State to the Federal Government either pursuant to Article I, Section 8, Clause 17, of the Constitution, or by means of a State cession statute, the necessity of Federal assent to such transfer of legislative jurisdiction has been firmly established by the enactment of the February 1, 1940, amendment to R. S. 355. While this amendment in terms specifies requirement for formal Federal acceptance prior to the transfer of exclusive or partial legislative jurisdiction, it also applies to the transfer of concurrent jurisdiction. The United States Supreme Court, in *Adams v. United States*, 319 U. S. 312 (1943), in the course of its opinion said (pp. 314-315 :

Both the Judge Advocate General of the Army and the Solicitor of the Department of Agriculture have construed the 1940 Act as requiring that notice of acceptance be filed if the government is to obtain *concurrent* jurisdiction. The Department of Justice has abandoned the view of jurisdiction which prompted the institution of this proceeding, and now advises us of its view that concurrent jurisdiction can be acquired only by the formal acceptance prescribed in the Act. These agencies cooperated in developing the Act, and their view's are entitled to great weight in its interpretation. * * * Besides, we can think of no other rational meaning for the phrase "jurisdiction, exclusive or partial," than that which the administrative construction gives it. Since the govern merit had not accepted jurisdiction in the manner required by the Act, the federal court had no jurisdiction of this proceeding. In this view it is immaterial that Louisiana statutes authorized the government to take jurisdiction, since at the critical time the jurisdiction had not been taken.

Former Presumption of Federal acquiescence in absence of dissent. -- Even before the enactment of the 1940 amendment to R. S. 355, it was clear that a State could not transfer, either pursuant to Article I, Section 8, Clause 17, of the Constitution, or by means of a cession statute, legislative jurisdiction to the Federal Government without the latter's consent Prior to the 1940 amendment to R. S. 355, However, it was not essential that the consent of the Federal *Government* be expressed formally or in accordance with, any prescribed procedure. Instead, it was presumed that the Federal Government accepted the benefits of a State enactment providing for the transfer of legislative jurisdiction. As discussed more fully below, this presumption of acceptance was to the effect that once a State legislatively indicated a willingness to transfer exclusive jurisdiction such jurisdiction passed automatically to the Federal 'Government without any action having to be taken by the United                                                                                                States.
However, the presumption would not operate where Federal action was taken demonstrating dissent from the acceptance of proffered jurisdiction.

Presumption in transfers by cession. -- In Fort Leavenworth *R. R. R. v. Lowe*, supra, in which a transfer of legislative jurisdiction by means of a State cession statute was approved for the first time, the court said (p. 528) that although the Federal Government had not in that case requested a cession of *jurisdiction*, nevertheless, "as it conferred a benefit, the acceptance of the act is to be presumed in the *absence* of any dissent on their part." See also *United States v. Johnston*, 58 F. Supp. 208, aff'd., 146 F. 2d 268 (C. A. 9, 1944), cert. den., 324 U. S. 876; 38 Ops. A. G. 341 (1935). A similar view has been expressed by a number of courts to transfers of jurisdiction by cession. In some instances, however, the courts have indicated the existence of affirmative grounds supporting Federal acceptance of such transfers. In *Yellowstone Park Transp. Co. v. Gallatin County*, 31 F. 2d 644 (C. A. 9, 1929), cert. den., 280 U. S. 555, it was stated that acceptance by the United States of a cession of jurisdiction by a State over a national park area within the State may be implied from acts of Congress providing for exclusive jurisdiction in national parks. See also *Columbia River Packers, Ass'n v. United States*, 29 F. 2d 91 (C. A. 9, 1928); *United States v. Unzeuta*, 281 U. S. 138 (1930)

Presumption in transfers by conditional consent -- Until recent years, it was not clear but that the consent granted by a State pursuant to Article I, Section 8, Clause 17, of the Constitution would under all circumstances serve to transfer legislative jurisdiction to the

Federal Government where the latter had "purchased" the area and was using it for one of the purposes enumerated in Clause 17. In *United States v. Cornell*, 25 Fed. Cas. 646, No. 14,867 (C. C. D. R. I., 1819), Justice Story expressed the view that Clause 17 is self-executing, and acceptance by the United States of the "benefits" of a State consent statute was not mentioned as an essential ingredient to the transfer of legislative jurisdiction under Clause 17. In the course of his opinion in that case, Justice Story said (P. 648):

> The constitution of the United States declares that congress shall have power to exercise "exclusive legislation" in all "cases whatsoever" over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards and other needful buildings. When therefore a purchase of land for any of these purposes is made by the national government, and the state legislature has given its consent to the purchase, the land so purchased by the very terms of the constitution ipso facto falls within exclusive legislation of congress, and the state jurisdiction is completely ousted. [Italics added.]

As late as 1930, it was stated in *Surplus Trading Co. v. Cook*, 281 U. S. 647, that (p. 652):

> It long has been settled that where lands for such a purpose [one of those mentioned in Clause 17] are purchased by the United States with the consent of the state legislature "the jurisdiction theretofore residing in the State passes," in virtue of the constitution provision, "to the United States," thereby making the jurisdiction of the latter the sole jurisdiction. [Italics added ]

The italicized portions of the quoted excerpts suggest that Article I, Section 8, Clause 17, of the Constitution, may be selfexecuting where the conditions specified in that clause for the, transfer of jurisdiction have been satisfied.

In *Mason Co. v. Tax Comm'n*, 302 U. S. 186 (1937), however, the Supreme Court clearly extended the acceptance doctrine, first applied to transfers of legislative jurisdiction by State cession statutes in Fort Leavenworth *R. R. v. Lowe*, supra, to transfers pursuant to Article I, Section 8, Clause 17, of the Constitution. The court said (p. 207):

> Even if it were assumed that the state statute should be construed to apply to the federal acquisitions here involved, we should still be met by the contention of the Government that it was not compelled to accept, and has not accepted, a transfer of exclusive jurisdiction. As such a transfer rests upon a grant by the State, through consent or cession, it follows, in accordance with familiar principles applicable to grants, that the grant may be accepted or declined. Acceptance may be presumed in the absence of evidence of a contrary intent, but we know of no constitutional principle which compels acceptance by the United States of an exclusive jurisdiction contrary to its own conception of its interests. * * *

What constitutes dissent — Only in a few instances have the courts indicated what may constitute a "dissent." *See Fort Leavenworth R. R. v. Lowe*, supra, by the Federal Government from a States proffer of legislative jurisdiction. In *Mason Co. v. Tax Comm'n*

supra, the court concluded that a validation by Congress of contracts entered into by Federal administrative officials granting to State, officials certain authority with respect to schools, police protection, etc., reflected a Congressional intent not to accept the legislative jurisdiction offered to the Federal Government by the State by the latter's enactment of a consent statute. In a State case (*International Business Machines Corporation v. Ott*, 230 La. 666, 89 So. 2d 193 (1956)), use by the Federal installation of similar State services, with no indication of Congressional knowledge in the latter, was held to have negative Federal acceptance of jurisdiction proffered under a general consent and cession statute of the State. It may be noted that extension of this decision would put in doubt the status of many, if not most, Federal areas now considered to be under the legislative jurisdiction of the United States. In *Atkinson v. State Tax Commission*, 303 U. S. 20 (1933), the court indicated that the enforcement of the Oregon workmen's compensation law in the Federal area was incompatible with exclusive Federal legislative jurisdiction, and, since the Federal Government did not seek to prevent the enforcement of this law, the presumption of Federal acceptance of legislative jurisdiction was effectively rebutted.

## CRIMINAL JURISDICTION

*Right of Defining and Punishing For Crimes:* Exclusive Federal Jurisdiction. -- Areas over which the Federal Government has acquired exclusive legislative jurisdiction are subject to the exclusive criminal jurisdiction of the United States. *Bowen v. Johnston*, 306 U. S. 19 (1939); *United States v. Watkins*, 22 F. 2d 437 (N. D. Cal., 1927). That the States can neither define nor punish for crimes in such areas is made clear in the case of In re Ladd, 74 Fed. 31 (C. C. N. D. Neb., 1896), (p. 40):

> * * * The cession of jurisdiction over a given territory takes the latter from within, and places it without, the jurisdiction of the ceding sovereignty. After a state has parted with its political jurisdiction over a given tract of land, it cannot be said that acts done thereon are against the peace and dignity of the state, or are violations of its laws; and the state certainly cannot claim jurisdiction criminally by reason of acts done at places beyond, or not within, its territorial jurisdiction, unless by treaty or statute it may have retained jurisdiction over its own citizens, and even then the jurisdiction is only over the person as a citizen. * * *

The criminal jurisdiction of the Federalize Government extends to private lands over which legislative jurisdiction has been vested in the Government, as well] as to federally owned lands. *United States v. Unzeuta*, supra; see also *Petersen v. United States*, 191 F. 2d 154 (C. A. 9, 1951), cert. denied 342 U. S. 885. Indeed, the Federal Government's power derived from exclusive legislative jurisdiction over an area may extend beyond the boundaries of the area, as may be necessary to make exercise of the Government's jurisdiction effective; thus, the Federal Government may punish a person not in the exclusive jurisdiction area for concealment of his knowledge concerning the commission of a felony within the area. *Cohens v. Virginia*, 6 Wheat. 264, 426-429 (1821).       In *Hollister v. United States*, 145 Fed. 773 (C. A. 8, 1906), the court said (p. 777).

Instances of relinquishment and acceptance of criminal jurisdiction by most

Legislatures *and* the national Congress, respectively, over forts, arsenals, public buildings, and other property of the United States situated within the states, are common, and their legality has never, so far as we know, been questioned.

On the other hand, while the Federal Government has power under various provisions of the Constitution to define, and prohibit as criminal, certain acts or omissions occurring anywhere in the United States, it has no power to punish for various other crimes, jurisdiction over which is retained by the States under our Federal-State system of government, unless such crimes occur on areas as to which legislative *jurisdiction* has been vested in the Federal Government. The absence of jurisdiction in a State, or in the Federal Government, over a criminal act occurring in an area as to which only the other of these governments has legislative jurisdiction is demonstrated by the case of *United States v. Tully*, 140 Fed. 899 (C. C. D. Mont., 1905). Tully had been convicted by a State court in Montana of first degree murder, and sentenced to be hanged. The Supreme Court of the State reversed the conviction on the ground that the homicide had occurred on a military reservation over which exclusive jurisdiction was vested in the Federal Government. The defendant was promptly indicted in the Federal court, but went free as the result of a finding that the Federal Government did not, have legislative jurisdiction over the particular land on which the homicide had occurred. The Federal court said (id. p. 905):

> It is unfortunate that a murderer should go unwhipped of justice, but it would be yet more unfortunate if any court should assume to try one charged with a crime without jurisdiction over the offense. In this case, in the light of the verdict of the jury in the state court, we may assure that justice would be done the defendant were he tried and convicted by any court and executed pursuant to its judgment. But in this court it would be the justice of the vigilance committee wholly without the pale of the law. The fact that the defendant is to be discharged may furnish a text for the thoughtless or uninformed to say that a murderer has been turned loose upon a technicality; but this is not a technicality. It goes to the very right to sit in judgment. * * · These sentiments no doubt appealed with equal force to the Supreme Court of Montana, and it is to its credit that it refused to lend its aid to the execution of one for the commission of an act which, in its judgment, was not cognizable under the laws of its state; but I cannot bring myself to the conclusion reached by that able court, and it is upon the judgment and conscience of this court that the matter of jurisdiction here must be decided.

The United States and each State are in many respects separate sovereigns, and ordinarily one cannot enforce the laws of the other.

State and local police have no authority to enter an exclusive Federal area to make investigations, or arrests, for crimes committed within such areas since Federal, not State, offenses are involved. Only Federal law enforcement officials, such as representatives of the Federal Bureau of Investigation and United States marshals and their deputies, would be authorized to investigate such of offenses and make arrests in connection with them. The policing of Federal exclusive jurisdiction areas must be accomplished by Federal personnel, and an offer of a municipality to police a portion of a road on such an area could not be accepted by the Federal official in charge of the area, as police protection by a municipality

to such an area would be inconsistent with Federal exclusive jurisdiction.

Concurrent Federal and State criminal jurisdiction.--There are, of course, Federal areas as to which a State, in ceding legislative jurisdiction to the United States, has reserved some measure of jurisdiction, including criminal jurisdiction, concurrently to itself. In general, where a *crime* has been committed in an area over which the United States and a State have concurrent criminal jurisdiction, both governments may try the accused without violating the double jeopardy clause of the Fifth Amendment. *Grafton v. United States*. 206 U. S. 333 (1907), held that the same acts constituting a crime cannot, after a defendant's acquittal or conviction in a court of competent jurisdiction of the Federal Government, be made the basis of a second trial of the defendant for that crime in the same or in another court, civil or military, of the same government. However, where the same act is a crime under both State and Federal law, the defendant may be punished under each of them. *Hebert v. Louisiana*, 272 U. S. 377 (1922). (p.382):

> It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each. The Fifth Amendment, like all the other guaranties in the first eight amendments, applies only to proceedings by the Federal Government, *Barron v. Baltimore*, 7 Pet. 243, and the double jeopardy therein forbidden is a second prosecution under authority of the Federal Government after a first trial for the same offense under the same authority., ,
> 
> ,

It is well settled, of course, that where two tribunals have concurrent jurisdiction that which first takes cognizance of a matter has the right, in general, to retain it to a conclusion, to the exclusion of the other. The rule seems well stated in *Mail v. Maxwell*, 107 Ill. 554 (1883), (p. 561):

> Where one court has acquired jurisdiction, no other court, State or Federal, will, in the absence of supervising or appellate jurisdiction, interfere, unless in pursuance of some statute, State or Federal, providing for such interference.

Other courts have held similarly. There appears to be some doubt concerning the status of a court-martial as a court, within the meaning of the Judicial Code, however.

Law *enforcement* on areas of exclusive or concurrent jurisdiction. — The General Services Administration is authorized by statute to appoint its uniformed guards as special policemen, with the same powers as sheriffs and constables to enforce Federal laws enacted for the protection of persons and property, and to prevent breaches of the peace, to suppress affrays or unlawful assemblies, and to enforce rules made by the General Services Administration for properties under its jurisdiction; but the policing powers of such special policemen are restricted to Federal property over which the United States has acquired exclusive or concurrent jurisdiction. Upon the application of the head of any Federal department or agency having property of the United States under its administration or control and over which the United States has exclusive or concurrent jurisdiction, the General Services Administration is authorized by statute to detail any such special policeman for the protection of such property and if it is deemed desirable to extend to such property the applicability of regulations governing property promulgated by the General Services

Administration. The General Services Administration is authorized by the same statute to utilize the facilities of existing Federal law-enforcement agencies, and, with the consent of any State or local agency, the facilities and services of such State or local law enforcement agencies.

Although the Department of the Interior required protection for an installation housing important secret work, the General Services Administration was without authority to place uniformed guards on the premises in the absence in the United States of exclusive or concurrent jurisdiction over the property, and notwithstanding the impropriety of permitting the policing of the property by local officials, if they were willing, without necessary security clearances.

Civilian Federal employees may be assigned to guard duty on Federal installations, but there is no Federal statute (other than that appertaining to General Services Administration and three statutes of even less effect 16 U.S.C. 559 (Forest Service), and 16 U.S.C. 10 and 10a (National Park Service) conferring any special authority on such guards. They are not peace officers with the usual powers of arrest; and have no greater powers of arrest than private citizens. As citizens, they may protect their own lives and property and the safety of others, and as agents of the Government they have a special right to protect the property of the Government. For both these purposes they may use reasonable force, 'and for the latter purpose they may bear arms irrespective of State law against bearing arms. Such guards, unless appointed as deputy sheriffs (where the State has at least concurrent criminal jurisdiction), or deputy marshals (where the United States has at least concurrent criminal jurisdiction), have no more authority than other private individuals so far as making arrests is concerned.

State and local officers may, by special Federal statute, preserve the peace and make arrests for crimes under the laws of States, upon immigrant stations, and the jurisdiction of such officers and of State and local courts has been extended to such stations for the purposes of the statute.

Partial jurisdiction. -- In some instances States in granting to the Federal Government a measure of exclusive legislative jurisdiction over an area have reserved the right to exercise, only by themselves, or concurrently by themselves as well as by the Federal Government, criminal jurisdiction over the area. In instances of complete State retention of criminal jurisdiction. whether with respect to all matters' or with respect to a specified category of matters, the rights of the States, of the United States, and of any defendants, with respect to crimes as to which State jurisdiction is so retained are as indicated in this chapter for areas as to which the Federal Government has no criminal jurisdiction. In instances of concurrent State and Federal criminal jurisdiction with respect to any matters the rights of all parties are, of course, determined with respect to such matters according to the rules of law generally applicable in areas of concurrent jurisdiction. Accordingly, there is no body of law specially applicable to criminal activities in areas under the partial legislative jurisdiction of the United States.

State criminal jurisdiction retained. -- State criminal jurisdiction extends into areas owned or occupied by the Federal Government, but as to which the Government has not 'acquired exclusive legislative jurisdiction with respect to crimes. And as to many areas owned by the Federal Government for its various purposes it has not acquired legislative jurisdiction. The Forest Service of the Department of Agriculture, for example, in accordance with a provision of Federal law (16 U.S.C. 480), has not accepted the jurisdiction proffered

by the statutes of many States, and the vast majority of Federal forest lands are held by the Federal Government in a proprietorial status only.

The Federal Government may not prosecute for ordinary crimes committed in such areas. Federal civilians who may be appointed as guards in the areas do not have police powers, but possess only the powers of arrest normally had by any citizen unless they receive appointments as State or local police officers.

The foregoing present several questions concerning the purported jurisdiction of the Court in the above styled action. Some of which are:

1.     Did the federal government ever obtain jurisdiction over the geographical areas described in the governments charging instruments as being the Locus in Quo whereon the purportedly prohibited acts of the undersigned took place ?

      a.     If so, when?

      b.     If so, to what extent?

2.     Are the governments charging instruments defective on their face where they fail to establish on their face or at any subsequent juncture therein, that the locus in quo was within the legislative, territorial or admiralty jurisdiction of the federal United States?

      a.     Was the Grand Jury informed that the locus in quo, as described by the government, not within the legislative, territorial or admiralty jurisdiction of the United States?

      b.     Did the United States district court commit reversible error where it failed to render a legal determination on the record as to whether or not the Court had jurisdiction to entertain the cause.

3.     Did the federal government establish on the record that it had Subject Matter jurisdiction over the alleged prohibited act(s), where the government failed to charge the undersigned with an alleged violation of the federal "Interstate Commerce" clause?

      a.     Did the federal government inform the Grand Jury that the sine qua non to the legitimate application of the enumerated subsections of the Controlled Substances Act is Commerce?

      b.     Did the United States district court error where it failed to notice the missing element in the charged offense, and failed to render a legal determination as to the obvious defect?

JUDICIAL NOTICE

## FACTS AND FINDINGS OF LAW

FACTS AND FINDS:

Fact, a thing done; an action performed or an incident transpiring;
an event or circumstance; an actual occurance.

(SPECIAL) FINDING:

Is a specific setting forth of the ultimate facts established by
the evidence and which are determinative of the judgment which must
be given.  It is only a determination of the ulimate facts on which
the law must be determined.  A special finding may also be said to be
one limited to the fact issue submitted.

ULTIMATE FACTS:

One that is essential to the right of action of matter of defense,
and the trial court is under the duty of submitting only ultimate or
controlling issues.

1.  Title 42 U.S.C.A. 1986 "Action for neglect to prevent," every
person who having knowledge that any of the wrongs conspired to be done
and mentioned in Section 42 U.S.C. 1985 of this title, are about to
be committed, and having power to prevent or aid in preventing the com-
mission of the same, neglects or refuses to do so, if such wrongful
act be committed, shall be liable to the party injured, or persons
legal representative, for all damages caused by such wrongful act, which
such person by reasonable diligence could have prevented; and such
damages may be recovered in an action on case; and any number or persons
guilty of such wrongful neglect or refusal may be joined as defendants
in action.  (42 U.S.C.A. 1986 is a derivative of 1985 and provides rem-
edy for persons injured by neglect or refusal of those having power
to do so to prevent wrongs specified in 1985).

2.  Title 28 U.S.C.A. Section 453: each justice or judge of the United
States shall take the following oath or affirmation before performing
the duties of his office:  "I ____ do solemnly swear (or affirm) that
I will administer justice without respect to persons, and do equal
right to the poor and to the rich, and that I will faithfully and im-
partially discharged and perform all the duties incumbent upon me as
____ under the Constitution and Laws of the United States so help me
God.

3.   7th Amendment:    . suits of common law, when the value in con-
troversy shall exceed twenty dollars, the right to trial by jury shall
be preserved, and no fact tried except by jury.

4.    Title 18 U.S.C.A. Sect. 1621 "Perjury" whoever

      (1)  having taken an oath before a competent tribunal, officer,
or person, in any case in which a law of the United States authorizes
an oath to be administered, that he will testify, declaration, de-
position, or certificate by him subscribed, is true, willfully and
contrary to such oath states or subscribes any material matter which
he does not believe to be true; or,

      (2)   in any declaration, certificate, verification, or statement
under penalty of perjury as perjury as permitted under Section 1746
of Title 28, United States Code, willfully subscribes as true any mater-
ial matter which ho does not believe to be true; is guilty of perjury
and shall, except otherwise expressly by laws, be fined under this title
or imprisoned not more than five years, or both.  This section is applic-
able whether the statement of subscription is made within or without
the United States.  See: 18 U.S.C. 1622, 18 U.S.C. 1623, and 18 U.S.C.
1001.

5.    "Perjury of Oath of Office"  Perjury; in for judgmental law, the
willful assertion as to a matter of fact, opinion, belief or knowledge,
made by a witness in a judicial proceeding as part of his or her ev-
idence, either upon oath or in any form allowed by law to be substituted
for an oath or in any form allowed by law whether such evidence is
given in open court, or in affidavit, such assertion being material
to the issue or point of inquiry and known to such witness to be false.
Perjury is a crime committed when a lawful oath is administered, in
some judicial proceeding, to a person who swears willfully, and falsely,
in matters material to the issue or point in question.  (Reference
Gatewood v. State, 15 MD. App. 314, 290 A.2d 551, 553; F.R.C.P. Rule
9(b), 12(d)(1), (2),(7); Title 42 U.S.C. 1986, 1985, 1983 Note 349,
14th Amendment U.S. Constitution.

6.    F.R.C.P. Rule 56(e):  Form of Affidavits; further testimony;
defense required; supporting and opposing affidavits shall be made on
personal knwoledge, shall set forth such facts as would be admissable
in evidence, and shall show affirmatively that the affiant is com-
petent to testify to the matters stated herein.  Sworn or certified
copies of all papers or parts thereof referred to in an affidavit

shall be attached thereto and served therewith.  The court may permit
affidavits to be supplemented or opposed by depositions, answers to
to interrogatories, or further affidavits.  When a motion for summary
judgment is made and supported as provided in this rule, an adverse
party may not rest upon the mere allegations or denials of his pleading,
but his response, by affidavits or as otherwise provided in this rule,
must set forth specific facts showing that there is a genuine issue
for trial.  If he does not so respond, summary judgment, if appropriate,
shall be entered against him.

7.     Stare Decisis:  Policy of courts to stand by precedent and not
to disturb settled point, Neff v. George, 364 Ill. 306, 4 N.E.2d 388,
390, 391.  Doctrine that, when a court has once laid down a principal
of law as applicable to a certain state of facts; regardless of whether
parties and property are the same.  Horne v. Moody Tex Civ., App., 146
S.W.2d 505, 509, 510.  Under doctrine a deliberate or solemn decision
of court made after argument on question of law fairly arising in the
case, and necessary to its determination, is an authority of binding
precedent in the same court or in other courts of equal or lower rank
in subsequent cases where the very point is again in controversy.
State v. Mellenberger, 163 Or. 233, 95 P.2d 709, 719, 720.  Blacks
Law Dictionary 5th Edition pg. 1261.  (Further reference:  Defendants
knowledge of wrongful acts is statutory prerequisite to suit under 42
U.S.C. 1986.  Buck v. Board of Elections, (1976, CA. 2, NY) 536 F.2d
522.  Prior, unreviewed state administrative adjudication may have no
preclusive effect on claims subsequently asserted under 42 U.S.C.S.
1981, 1983, 1985, 1986, 1988.  Elliot v. University of Tennessee,
(1985, CA. 6 Tenn.) 766 F.2d 982, 38 BNA FEP Cas. 522, 37 CCH EPD
25419, cert. gr. 474 U.S. 788, 92 L.Ed.2d 635, 106 S.Ct. 3220, 41
BNA FEP Cas. 177, 40 CCH EPD 36205).

8.     F.R.C.P. 12(b)(6):  Rule 12 is defenses: Rule 12(b) states with
particularity, "How Presented," every defense in law or fact, to a
claim for relief in any pleading, whether a claim, counter claim,
cross-claim, or third party claim, shall be asserted in the responsive
pleading thereto if one is required, except that the following defense
may at the opinion of the pleader be made Section 9. "2(b)'6 - fail-
ure to state a claim upon which relief can be granted.  Refer Note
7.

9.    F.R.C.P. 12(b)(2): Rule 12 is defenses: Rule 12(b) states with
particularity, "How Presented," every defense in law of fact shall
be asserted in the responsive pleading thereto if one is required,
except that the following defenses may at the option of the pleader
be made by motion: 12(b)(2) lack of jurisdiction over the person.
(Refer F.R.C.P. 12(b)(7): failure to join a party under Rule 19.)(F.R
C.P. 19(b)).

10.    F.R.C.P. 12(b)(1): Rule 12 is defenses: Rule 12(b) states with
particularity, "How Presented," every defense in law or fact to a
claim for relief in any pleading, whether a claim, counter claim,
cross-claim, or third party claim, shall be asserted in the responsive
pleading thereto if one is required, except that the following defense
may at the option of the pleader be made by motion: 12(b)(1): lack
of jurisdiction over the subject matter.

11.    F.R.C.P. 12(b)(7): Rule 12 is defenses: Rule 12(b) states with
particularity. How Presented," every defense in law or fact, to a
claim for relief in any pleading, whether a cliam, counter claim,
cross-claim, or third party claim shall be asserted in the responsive
pleading thereto if one is required, except that the following de-
fenses may at the option of the pleader be made by motion: 12(b)(7):
Failure to join a party under Rule 19.

12.    14th Amendment: No state shall make or enforce any law which
shall abridge the privileges or immunities of the U.S., nor shall
any state deprive any person of like, liberty, or property without
due process of the law, nor to any person the equal protection of
the law.13.    Title 18 U.S.C.A. Section 872: Extortion by officers
or employees of the United States whoever, being an officer, or em-
ployee of the United States or any department or agency therof, or
representing himself to be or assuming to act as such, under color
or pretense of office or employment commits or attempts an act of
extortion, shall be fined under this title or imprisoned not more
than 3 years, or both; but if the amount so extorted or demanded does
not exced $100, he shall be fined under this title or imprisoned not
more than one year. (As amended October 31, 1951, c. 655 subsect.
24(3), 65 Stat. 720; September 13, 1994, Pub. L. 103-322,  Title
XXXIII, subsect. 2 30016(1)(G)(F), 108 Stat. 2147).

14.   1st Amendment: Freedom of Speech and Press, and to petition
for a redress of grievance.  5th Amendment: No person shall be depriv-
ed of life, liberty, or property without due process of law.   6th
Amendment: Right to a speedy and public trial, by an impartial jury
of the state and district wherein the crime shall have been committed,
and informed of the nature and cause of the accusation.  7th Amendment:
In suits of comon law, where the value in controversy shall exceed
twenty dollars, the right to trial by jury shall be preserved, and
no fact tried except by jury.

15.     Title 18 U.S.C.A. Section 242: provides in pertinent part;
"whoever, under color of law, statute, ordinance, regulation, or custom
willfully subjects any inhabitant of any state, territory, or district
to the deprivation of any rights, privileges, or immunities secured
or protected by the Constitution or laws of the United States...shall
be fined not more than $1000 dollars or imprisoned not more than one
year, or both."  Question was not whether state law had been violated
but whether inhabitant of state had been deprived of federal right
by one who acted under color of any law.  Screws v. United States,
(1945) 325 U.S. 91, 89 L.ED. 1495, 65 S.Ct. 1031, 162 ALR 1330.

16.     Title 42 U.S.C.A. Section 1985: (2) Ref. Obstructing Justice
intimidating party, witness, (2) if two or more persons in any state
or twrritory conspire to deter, by force, intimidation, or threat,
any party or witness in nay court of the United States from "attending
such court or from testifying to any matter pending" therein, freely,
fully, and thruthfully, or to injure such party or witness in his
person or property on account of his having so attended or testified,
or to influence the verdict, presentment, or indictment of any grand
or petit jury on property on account of any verdict, presentment,
or indictment lawfully assented to by him, or of his being or having
been such juror: or if two or more persons conspire for the purpose
of impeding, hindering, obstructing, or defeating, in any matter,
the due course of justice in any state or territory, with intent to
deny to any citizen the equal protection of the law or to injure him
or his property for lawfully enforcing, or attempting to enforce,
the right of any person, or class of persons, to the equal protection
of the law.

     DISCRIMINATION: A failure to treat all persons equally where no
reasonable distinction can be found between those favored and those

not favored. Ref. Baker v. Cal. Land Title Co., D.C. Cal. 349, F.Supp.
23, 238, 239. Title VII of the 1964 Civil Rights Act.

17.  Title 18 U.S.C.A. 241: "If two or more persons conspire to
injure, oppress, threaten, or intimidate any citizen in the free ex-
ercise or enjoyment of any right or privileges secured to him by the
Constitution or laws of the United States or because of his having
so exercised the same;" or

"If two or more persons go in disguise on the highway or on the
premises of another, with intnet to prevent or hinder his free ex-
ercise or enjoyment of any right or privilege so secured."

"They shall be fined not more than $10,000 or imprisoned more
than ten years, or both."

18.  Title 42 U.S.C.A. Section 1983; every person who, under color
of any statute, ordinance,  regulation, custom or usage, of any State
or Territory or the District of Columbia, subjects, or causes to be
subjected, any citizen of the United States, or other person within
the jurisdiction thereof to the deprivation of any rights, privileges
or immunities secured by the Constitution and laws, shall be liable
to the party injured in an action at law, suit in equity, or other
proper procedding for redress.

19.  4th Amendment: Unreasonable search and seizures shall not be
violated, and no warrants shall issue, but upon probable cause and
supported by "oath or affirmatin," and particularly describing the
place to be searched and the person or thing to be seized.

20.  Although city is not "person" amendable to action under 42
U.S.C.A. 1986, city officials acting in thier official capacities
are subject to action under this. Black Bros. Combined Inc. v.
Richmand, 386 F.Supp. 147, 12 BNA FEP Cas 432, 10 CCH EPD 1027, (1974,
ED Va). If city or other municipal corporation had policy or custom
of refusing or neglecting to prevent violations of 42 U.S.C.A. 1985,
and city's agents, servants, and employees followed that policy or
custom, then city should be held liable under 42 U.S.C.A. 1986.
Vasquez v. Reno, 461 F.Supp. 1098, 21 BNA FEP Cas 1281, 19 CCH EPD
9091, (1978, DC Nev). Municipality is directly liable under 42
U.S.C.A. 1985(2), 1985(3), and 1986 only where it is shown that de-
privation of rights was pursuant to policy statement  ordinance,
regulation, a decision of an official adopted and promulgated, or

26.    Fraud: An intnetional perversion of truth, for the purpose
of inducing another in reliance upon it in part with some valuable
thing belonging to him or to surrender a legal right a false repre-
sentation of a matter of fact, whether by words or by conduct, by
false or misleading allegations or by concealment of that which should
have been disclosed, which deceives and is intended to deceive an-
other so that he shall act upon it to his legal injury.  Brainerd
Dispatch Newspaper Co. v. Crow Wing County, 196 Minn. 194, 264 N.W.
779, 780.  Any kind of artifice employed by anperson all multifarious
means which human ingenuity can devise, and which are resorted to

by one individual to get advantage over another by false suggestions
or by suppression of truth and includes all surprise, trick, cunning,
dissembling, and any unfair way by which anotherd.  Johnson v. McDonald
170 Ok;l. 117, 39 P.2d 150.  "Bad Faith" and "Fraud" are synonymous
and also synonymous of dishonesty, indifelity, faithlessness, per-
fidy, infairness, etc.  Joiner v. Joiner, Tex. Civ. App., 87 S.W.2d
903, 914, 915.
NOTE:

    Because everyone is deemed is deemed to know the law, inaccurate
representation regarding legal matters are not generally actionable.
Of course, were one to make a representation regarding a matter of
law that the mis-representer himself knew to be inaccurate, a "fraud"
action would lie.  (Refer White v. Mulvanie, 575 S.W.2d 184 (Mo.
1978))(party's "superior" knowledge of the law)[see note 1 fact and
finding sheet] held to be an exception from general rule that a mis-
representation, synonymous of dishonesty, infidelity, faithlessness,
perfidy, unfairness, etc.  Joiner v. Joiner, Tex. Civ. App., 87 S.W.2d.
903, 914, 915.
NOTE:

    Because everyone is deemed to know the law, inaccurate represent-
ations regarding legal matters are not generally actionable.  Of
course, were one to make a representation regarding a matter of law
that the misrepresenter himself knew to be inaccurate, a "Fraud" action
would lie.  White v. Mulvania, 575 S.W.2d. 184 (Mo. 1978)(party's
"superior" knowledge of the law) held to be an exception against
general rule that a misrepresentation of law is not acceptable.

**WHEREFORE**, the government's cause against the Petitioner is premised upon an unlawful application of law:

1.    Lack of Subject Matter Jurisdiction over the Petitioner, a citizen party;

2.    No Fourth Amendment Search Warrant;

3.    Unlawful application of U.S. Codes;

4.    Unlawful indictment;

5.    Lack of published regulation in the Federal Register;

6.    Failing to give notice under Due Process and denial of Due Process;

7.    Unauthorized prosecution under Admiralty/Maritime law;

8.    Usurpation of power not delegated or legislated; and,

9.    The denial of the effective assistance of counsel.

## CONCLUSION

In the nature of Rule 201(d) of the Federal Rule of Evidence the court is compelled to take **JUDICIAL NOTICE** of the foregoing who it is shown that the legislative jurisdiction of the Federal Government is strictly limited and defined. The Federal Government has no Constitutional or Congressional authority to restrict or compel the activities of private citizens, domiciled without the legislative, territorial or admiralty jurisdiction of the Federal United States. The Jurisdiction of the Court is limited by and does not exceed that of the Federal Government. Where the instant matter is concerned, neither the Federal Government or the district court have established, on the record, documented proof that the alleged prohibitive conduct violated a provision of law.

**THEREFORE**, the undersigned respectfully prays that the Court will take **JUDICIAL NOTICE** OF THE FOREGOING AND FIND AS A MATTER OF LAW AND FACT - THAT THE FEDERAL GOVERNMENT LACKS LEGISLATIVE AND SUBJECT MATTER JURISDICTION.

Date: _May 7,_ , 2008                 Respectfully submitted:

_Arnold Gobin_

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
FILED
10/2/96
MICHAEL N. MILBY/CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | CRIMINAL NO. H-96-176-S |
| | § | |
| ARISTEDE MICHAEL JOHNSON, | § | |
| PEDRO SANCHEZ and | § | |
| MARIA ESPERANZA GONZALEZ | § | |

## SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES THAT:

### COUNT ONE

From on or about July 17, 1996 and continuing to on or about August 28, 1996, in the Houston Division of the Southern District of Texas and within the jurisdiction of this Court, the defendants,

**ARISTEDE MICHAEL JOHNSON,**

**PEDRO SANCHEZ,**

**and**

**MARIA ESPERANZA GONZALEZ,**

combined, conspired, confederated and agreed together, to commit an offense against the United States, specifically, to violate Title 18, United States Code, Sections 2113(a) and (d).

It was the purpose of this conspiracy to take money, from the person or presence of another, by force, violence and intimidation, which money belonged to and was in the care, custody and control of the Communicators Federal Credit Union, Houston, Texas, the

deposits of which were insured by the National Credit Union Share Insurance Fund.

### Overt Acts

In order to accomplish the object of this conspiracy, the following overt acts, among others, were committed in the Southern District of Texas:

1. On or about July 17, 1996, **MARIA ESPERANZA GONZALEZ** rented a car from Montgomery Ward's AutoRent.

2. On or about July 18, 1996, **ARISTEDE MICHAEL JOHNSON** and **PEDRO SANCHEZ** used the car rented by **MARIA ESPERANZA GONZALEZ** to transport themselves to the Communicators Federal Credit Union at 411 N. Sam Houston, Houston, Texas.

3. On or about July 18, 1996, **ARISTEDE MICHAEL JOHNSON** and **PEDRO SANCHEZ** entered the Communicators Federal Credit Union at 411 N. Sam Houston, Houston, Texas and took approximately nine thousand, five hundred and twenty-two dollars ($9,522.00) in United States currency.

4. During the July 18, 1996 robbery of the Communicators Federal Credit Union, **PEDRO SANCHEZ** at all times aimed a pistol at the credit union employees.

5. During the July 18, 1996 robbery of the Communicators Federal Credit Union, **ARISTEDE JOHNSON** took money from the teller drawers of the credit union and placed the money into a purse.

2

6.    On or about August 24, 1996, **MARIA ESPERANZA GONZALEZ** rented a car from Thrifty Car Rental.

7.    On or about August 26, 1996, **ARISTEDE MICHAEL JOHNSON** and **PEDRO SANCHEZ** used the car rented by **MARIA ESPERANZA GONZALEZ** on August 24, 1996 to transport themselves to the Communicators Federal Credit Union at 411 N. Sam Houston, Houston, Texas.

8.    On or about August 26, 1996, **ARISTEDE MICHAEL JOHNSON** and **PEDRO SANCHEZ** entered the Communicators Federal Credit Union at 411 N. Sam Houston, Houston, Texas and took approximately ten thousand and forty-five dollars ($10,045.00) in United States currency.

9.    During the August 26, 1996 robbery of the Communicators Federal Credit Union, **PEDRO SANCHEZ** at all times aimed a pistol at the credit union employees.

10.    During the August 26, 1996 robbery of the Communicators Federal Credit Union, **ARISTEDE JOHNSON** took money from the teller drawers of the credit union and placed the money into a garbage bag.

In violation of Title 18, United States Code, Section 371.


<u>COUNT</u> <u>TWO</u>

On or about July 18, 1996, in the Houston Division of the Southern District of Texas, the defendants,

**ARISTEDE MICHAEL JOHNSON**

**and**

**PEDRO SANCHEZ,**

3

each aiding and abetting the other, did, by force, violence and intimidation, take from the person and presence of another, approximately nine thousand, five hundred and twenty-two dollars ($9,522.00) in money belonging to and in the care, custody, control, management and possession of the Communicators Federal Credit Union, Houston, Texas, the deposits of which were insured by the National Credit Union Share Insurance Fund, and in committing such offense, the defendants did assault and put in jeopardy the life of another person by the use of a dangerous weapon, that is a firearm,

In violation of Title 18, United States Code, Sections 2113(a) and 2113(d) and Section 2.

## COUNT THREE

On or about July 18, 1996, in the Houston Division of the Southern District of Texas, the defendants,

**ARISTEDE MICHAEL JOHNSON**

**and**

**PEDRO SANCHEZ,**

each aiding and abetting the other, knowingly used and carried a firearm, a pistol, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, specifically a robbery of the Communicators Federal Credit Union, Houston, Texas,

In violation of Title 18, United States Code, Section 924(c)(1) and Section 2.

4

## COUNT FOUR

On or about August 26, 1996, in the Houston Division of the Southern District of Texas, the defendants,

**ARISTEDE MICHAEL JOHNSON,**

**PEDRO SANCHEZ,**

**and**

**MARIA ESPERANZA GONZALEZ,**

each aiding and abetting the other, did, by force, violence and intimidation, take from the person and presence of another, approximately ten thousand and forty-five dollars ($10,045.00) in money belonging to and in the care, custody, control, management and possession of the Communicators Federal Credit Union, Houston, Texas, the deposits of which were insured by the National Credit Union Share Insurance Fund, and in committing such offense, the defendants did assault and put in jeopardy the life of another person by the use of a dangerous weapon, that is a firearm,

In violation of Title 18, United States Code, Sections 2113(a) and 2113(d) and Section 2.

## COUNT FIVE

On or about August 26, 1996, in the Houston Division of the Southern District of Texas, the defendants,

**ARISTEDE MICHAEL JOHNSON**

**and**

**PEDRO SANCHEZ,**

each aiding and abetting the other, knowingly used and carried a firearm, a pistol, during and in relation to a crime of violence

5

for which they may be prosecuted in a court of the United States, specifically a robbery of the Communicators Federal Credit Union, Houston, Texas,

In violation of Title 18, United States Code, Section 324(c)(1) and Section 2.

A TRUE BILL:

_Joaquin Morales_
FOREPERSON OF THE GRAND JURY

GAYNELLE GRIFFIN JONES
United States Attorney

BY: _Juliette M. La Chapelle_
Juliette M. La Chapelle
Assistant United States Attorney

6

AO 245B (Rev 3/95) Sheet 1 - Judgment in a Criminal

# United States District Court

## Southern District of Texas

UNITED STATES OF AMERICA
v.

### ARISTEDE MICHAEL JOHNSON

**JUDGMENT IN A CRIMINAL CASE**

(For Offenses Committed On or After November 1, 1987)

Case Number:  4:96CR00176-001

Scott R. Courtney
Defendant's Attorney

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED
3/31/97
MICHAEL N. MILBY, CLERK

## THE DEFENDANT:

[ ] pleaded guilty to count(s)

[ ] pleaded nolo contendere to count(s)
which was accepted by the court

[X] was found guilty on count(s)  1S, 2S, 3S, 4S and 5S on January 28, 1997
after a plea of not guilty

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C. § 371 | Conspiracy to rob a federally insured credit union. | 08/28/1996 | 1S |
| 18 U.S.C. § 2 | Armed robbery of FICU, aiding and abetting, [in violation of 18:2113(a) & (d)] | 07/18/1996 | 2S |
| 18 U.S.C. § 2 | Armed robbery of FICU, aiding and abetting, [in violation of 18:2113(a) & (d)] | 08/26/1996 | 4S |
| 18 U.S.C. § 2 | Use/carry a firearm during crime of violence, aiding and abetting, [in violation of 18:924(c)] | 07/18/1996 | 3S |

See Additional Counts of Conviction - Sheet 1.01

The defendant is sentenced as provided in pages 2 through  6  of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984

[ ] The defendant has been found not guilty on count(s)

[ ] Count(s)                              (is)(are) dismissed on the motion of the United States

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

| | |
|---|---|
| Defendant's Soc. Sec. No.  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 | |
| Defendant's Date of Birth.  03/16/1970 | |
| Defendant's USM No.  72901-079 | |
| Defendant's Residence Address | |

16234 Mission Glen

03/26/1997
Date of Imposition of Judgment

Houston          TX          77083

*[signature]*
Signature of Judicial Officer

LEE H. ROSENTHAL

Defendant's Mailing Address

UNITED STATES DISTRICT JUDGE
Name & Title of Judicial Officer

16234 Mission Glen

Houston          TX          77083

March 27, 1997
Date

*[handwritten]* LHC
ICC

*[handwritten]* TURNED My SELF
IN  SEPT 3, 1996

AO 245B (Rev. 3/95) Sheet 1 - Judgment in a Criminal Case

DEFENDANT.     **ARISTEDE MICHAEL JOHNSON**

CASE NUMBER.     4:96CR00176-001

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C.  § 2 | Use/carry a firearm during crime of violence, aiding and abetting, [in violation of 18:924(c)] | 08/26/1996 | 5S |

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

To all to whom these presents shall come, Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf,

the seal of the National Archives of the United States, that the attached reproduction(s) is a true and

copy of documents in his custody.

| SIGNATURE | | |
|---|---|---|
| NAME Richard Hunt | | DATE 10/05/06 |
| TITLE Director Center for Legislative Archives | | |
| NAME AND ADDRESS OF DEPOSITORY The National Archives Washington, D.C. 20408 | | |

*U.S. GPO: 1998-442-221/89075

NA FORM 14007A (10-86)

Union Calendar No. 138

80TH CONGRESS
1ST SESSION

# H. R. 3190

[Report No. 304]

---

## IN THE HOUSE OF REPRESENTATIVES

APRIL 24, 1947

Mr. ROBSION introduced the following bill; which was referred to the Committee on the Judiciary

APRIL 24, 1947

Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

---

# A BILL

To revise, codify, and enact into positive law, Title 18 of the United States Code, entitled "Crimes and Criminal Procedure".

1   Be it enacted by the Senate and House of Representa-
2   tives of the United States of America in Congress assembled,
3   That Title 18 of the United States Code, entitled "Crimes
4   and Criminal Procedure", is hereby revised, codified, and
5   enacted into positive law, and may be cited as "Title 18,
6   U. S. C., §—", as follows:

367

1   international extradition, including the fees of the com-

2   missioner, shall be certified by the judge or commissioner

3   before whom the hearing shall take place to the Secretary

4   of State of the United States, and the same shall be paid

5   out of appropriations to defray the expenses of the judiciary

6   or the Department of Justice as the case may be.

7   The Attorney General shall certify to the Secretary

8   of State the amounts to be paid to the United States on

9   account of said fees and costs in extradition cases by the

10  foreign government requesting the extradition, and the

11  Secretary of State shall cause said amounts to be collected

12  and transmitted to the Attorney General for deposit in the

13  Treasury of the United States.

CHAPTER 211.—JURISDICTION AND VENUE

Sec.
3231. District courts.
3232. District of offense—Rule.
3233. Transfer within District—Rule.
3234. Change of venue to another district—Rule.
3235. Venue in capital cases.
3236. Murder or manslaughter.
3237. Offenses begun in one district and completed in another.
3238. Offenses not committed in any district.
3239. Threatening communications.
3240. Creation of new district or division.
3241. Jurisdiction of offenses under certain sections.
3242. Indians committing certain offenses; acts on reservations.
3243. Jurisdiction of State of Kansas over offenses committed by or
      against Indians on Indian reservations.

14  § 3231. DISTRICT COURTS

15  Offenses against the United States shall be cognizable

16  in the district courts of the United States, but nothing in

17  this title shall be held to take away or impair the jurisdiction

18  of the courts of the several states under the laws thereof.

Union Calendar No. 138

80TH CONGRESS
1ST SESSION

# H. R. 3190

[Report No. 304]

# A BILL

To revise, codify, and enact into positive law,
Title 18 of the United States Code, entitled
"Crimes and Criminal Procedure".

By Mr. ROBSION

APRIL 24, 1947
Referred to the Committee on the Judiciary

APRIL 24, 1947
Committed to the Committee of the Whole House on
the State of the Union and ordered to be printed

PASSED HOUSE
AMENDED

MAY 12 1947

APPENDIX "II"

## NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

### To all to whom these presents shall come, Greeting:

virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf,

seal of the National Archives of the United States, that the attached reproduction(s) is a true and

co            of documents in his custody.



| SIGNATURE | |
|---|---|
| NAME    Richard Hunt | DATE    10/12/06 |
| TITLE  Director | |
| Center for Legislative Archives | |
| NAME AND ADDRESS OF DEPOSITORY | |
| The National Archives | |
| Washington, D.C. 20408 | |

*U.S. GPO: 1998-442-221/89023            NA FORM 14007A (10-86)

THE SENATE OF THE UNITED STATES

: May       legislative day, April 21), 1947

twice and       red to the Committee on the Judiciary

JUN 1 4 '48 LEG. DAY  JUN    '48

Reported by Mr. Wiley, with amend-
ments.

Reported with amendments.

## AN ACT

To revise, co      , and enac     to positive law, Title 18 of the
United St      Code, enti      "Crimes and Criminal Pro-
cedure".

1        Be it ena     by the Sen      and House of Representa-
2   tives of the U      d States of Am      a in Congress assembled,
3   That Title 18 of      e United State     ode, entitled "Crimes
4   and Criminal Proc      re", is hereby     vised, codified, and
5   enacted into positive      , and may b      ted as "Title 18,
             "       as follows:

80TH CONGRESS
1ST SESSION

# H. R. 3190

IN THE SENATE OF THE UNITED STATES

MAY 13 (legislative day, APRIL 21), 1947

Read twice and referred to the Committee on the Judiciary

# AN ACT

To revise, codify, and enact into positive law, Title 18 of the
United States Code, entitled "Crimes and Criminal Pro-
cedure".

1    *Be it enacted by the Senate and House of Representa-*
2    *tives of the United States of America in Congress assembled,*
3    *That* Title 18 of the United States Code, entitled "Crimes
4    and Criminal Procedure", is hereby revised, codified, and
5    enacted into positive law, and may be cited as "Title 18,
6    U. S. C., §—", as follows:

471

| | Date | Statutes at Large | | | | U. S. Code | |
|---|---|---|---|---|---|---|---|
| | | Chapter | Section | Volume | Page | Title | Section |
| 521 | 1946—July 10__ | 547 | _____ | 60 | 524, 525 | 18 | 641 |
| 503, | July 24__ | 608 | _____ | 60 | 656 | 18 | 409–411 |
| e, 504 | Aug. 2__ | 735 | _____ | 60 | 789 | 18 | 408e |
| 361 | Aug. 14__ | 964 | 3 | 60 | 1064 | 7 | 1026 |

** Only the provisions amending section 32 of Act July 22, 1937, ch. 517, title IV, 50 Stat. 531, 532.

Passed the House of Representatives May 12, 1947.

Attest:                          JOHN ANDREWS,

                                           *Clerk.*

367

1  international extradition, including the fees of the com-

2  missioner, shall be certified by the judge or commissioner

3  before whom the hearing shall take place to the Secretary

4  of State of the United States, and the same shall be paid

5  out of appropriations to defray the expenses of the judiciary

6  or the Department of Justice as the case may be.

7      The Attorney General shall certify to the Secretary

8  of State the amounts to be paid to the United States on

9  account of said fees and costs in extradition cases by the

10  foreign government requesting the extradition, and the

11  Secretary of State shall cause said amounts to be collected

12  and transmitted to the Attorney General for deposit in the

13  Treasury of the United States.

CHAPTER 211.—JURISDICTION AND VENUE

Sec.
3231. District courts.
3232. District of offense—Rule.
3233. Transfer within District—Rule.
3234. Change of venue to another district—Rule.
3235. Venue in capital cases.
3236. Murder or manslaughter.
3237. Offenses begun in one district and completed in another.
3238. Offenses not committed in any district.
3239. Threatening communications.
3240. Creation of new district or division.
3241. Jurisdiction of offenses under certain sections.
3242. Indians committing certain offenses; acts on reservations.
3243. Jurisdiction of State of Kansas over offenses committed by or
      against Indians on Indian reservations.

14  § 3231.  DISTRICT COURTS

15      Offenses against the United States shall be cognizable

16  in the district courts of the United States, but nothing in

17  this title shall be held to take away or impair the jurisdiction

18  of the courts of the several states under the laws thereof.

The district courts of the United States shall have

original jurisdiction, exclusive of the courts of the

# NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come. Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, the seal of the National Archives of the United States, that the attached reproduction(s) is a true and correct copy of documents in his custody.



| SIGNATURE | |
|---|---|
| NAME<br>Richard H. Hunt | DATE<br>10/19/05 |
| TITLE<br>Director | |
| NAME AND ADDRESS OF DEPOSITORY<br>Center for Legislative Archives<br>The National Archives<br>Washington, D.C. 20408 | |

NA FORM APR 85 14




Calendar No. *1675*

80TH CONGRESS
1ST SESSION

# H. R. 3190

REPORT NO. *1620*

IN THE SENATE OF THE UNITED STATES

MAY 13 (legislative day, APRIL 21), 1947

Read twice and referred to the Committee on the Judiciary

*Reported by Mr. Wiley, with amend-
ments.*

JUN 1 4 48 JUN. MAY JUN 1   48

Reported with amendments.

# AN ACT

To revise, codify, and enact into positive law, Title 18 of the
United States Code, entitled "Crimes and Criminal Pro-
cedure".

1    *Be it enacted by the Senate and House of Representa-*

2    *tives of the United States of America in Congress assembled,*

3    That Title 18 of the United States Code, entitled "Crimes

4    and Criminal Procedure", is hereby revised, codified, and

5    enacted into positive law, and may be cited as "Title 18,

367

1    international extradition, including the fees of the com-

2    missioner, shall be certified by the judge or commissioner

3    before whom the hearing shall take place to the Secretary

4    of State of the United States, and the same shall be paid

5    out of appropriations to defray the expenses of the judiciary

6    or the Department of Justice as the case may be.

7         The Attorney General shall certify to the Secretary

8    of State the amounts to be paid to the United States on

9    account of said fees and costs in extradition cases by the

10   foreign government requesting the extradition, and the

11   Secretary of State shall cause said amounts to be collected

12   and transmitted to the Attorney General for deposit in the

13   Treasury of the United States.

CHAPTER 211.—JURISDICTION AND VENUE

Sec.
3231. District courts.
3232. District of offense—Rule.
3233. Transfer within District—Rule.
3234. Change of venue to another district—Rule.
3235. Venue in capital cases.
3236. Murder or manslaughter.
3237. Offenses begun in one district and completed in another.
3238. Offenses not committed in any district.
3239. Threatening communications.
3240. Creation of new district or division.
3241. Jurisdiction of offenses under certain sections.
3242. Indians committing certain offenses; acts on reservations.
3243. Jurisdiction of State of Kansas over offenses committed by or
      against Indians on Indian reservations.

14   § 3231.  DISTRICT COURTS

15        Offenses against the United States shall be cognizable

16   in the district courts of the United States, but nothing in

17   this title shall be held to take away or impair the jurisdiction

18   of the courts of the several states under the laws thereof.

     The district courts of the United States shall have

     original jurisdiction, exclusive of the courts of the

471

| Date | Statutes at Large | | | | U. S. Code | |
|------|-------|---------|--------|------|-------|---------|
| | Chapter | Section | Volume | Page | Title | Section |
| 1946—July 10__ | 547 | _____ | 60 | 524, 525 | 18 | 641 |
| July 24__ | 606 | _____ | 60 | 656 | 18 | 409–411 |
| Aug. 2__ | 735 | _____ | 60 | 789 | 18 | 408e |
| Aug. 14__ | 964 | ⁵⁵ 3 | 60 | 1064 | 7 | 1026 |

⁵⁵ Only the provisions amending section 52 of Act July 22, 1837, ch. 517, title IV, 50 Stat. 581, 582.

Passed the House of Representatives May 12, 1947.

Attest:                          JOHN ANDREWS,

                                        *Clerk.*

| 1947— | Apr. 16 | 59 | —— | 61 | 52 | 18 | 413 |
| | May 16 | 73 | —— | 61 | 97 | 18 | 744 |
| | June 21 | 111 | —— | 61 | 134 | 18 | 244 |
| | June 23 | 120 | 204 | 61 | 159 | 2 | 453 |

80TH CONGRESS
1st Session

H. R. 3190

[REPORT No. 1620]

# AN ACT

To revise, codify, and enact into positive law, Title 18 of the United States Code, entitled "Crimes and Criminal Procedure".

MAY 13 (legislative day, APRIL 21), 1947
Read twice and referred to the Committee on the Judiciary

*Reported by Mr. Wiley, with amendments.*

Reported with amendments.

APPENDIX "IV"

## NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

### To all to whom these presents shall come. Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf,
[under] the seal of the National Archives of the United States, that the attached reproduction(s) is a true and
[correct copy] of documents in his custody.

| SIGNATURE | |
|---|---|
| *Aloha South* | |
| NAME<br>ALOHA SOUTH | DATE<br>Oct. 13 2005 |
| TITLE<br>ASSISTANT BRANCH CHIEF, NWCTB | |
| NAME AND ADDRESS OF DEPOSITORY<br>The National Archives<br>Washington, D.C. 20408 | |

NA FORM 14007A (10-86



# Congressional Record

United States
of America

PROCEEDINGS AND DEBATES OF THE 80ᵗʰ CONGRESS, SECOND SESSION

## SENATE

MONDAY, JULY 26, 1948

The Senate reassembled this day in its Chamber at the Capitol, in the city of Washington, in pursuance of the proclamation of the President of the United States of the 15th day of July 1948.

ARTHUR VANDENBERG, President pro tempore, called the Senate to order at 12 o'clock noon.

Rev. Bernard Braskamp, D. D., pastor of the Gunton-Temple Memorial Presbyterian Church, Washington, D. C., offered the following prayer:

O Thou God of infallible wisdom, we have entered upon days which are fraught with perplexing problems and heavy responsibilities, but also with glorious opportunities and possibilities.

We pray that we may have the interpreting light and the clear and confident leading of Thy spirit in all our deliberations and decisions.

May the ideals and principles of our blessed Lord not only stir our emotions but our wills, and may every lofty God-inspired sentiment be translated into action and achievement.

Grant that it may be the goal of all our aspirations to glorify Thy great and holy name and to build Thy kingdom of peace and good will among men and nations.

Hear us for the sake of the Christ. Amen.

The PRESIDENT pro tempore. The proclamation of the President reconvening the Congress will be read by the clerk.

The Chief Clerk (Edward E. Mansur, Jr.) read the proclamation, as follows:

CONVENING THE CONGRESS BY THE PRESIDENT OF THE UNITED STATES OF AMERICA—A PROCLAMATION

Whereas the public interest requires that the Congress of the United States should be convened at 12 o'clock noon on Monday, the 26th day of July 1948, to receive such communication as may be made by the Executive;

Now, therefore, I, Harry S. Truman, President of the United States of America, do hereby proclaim and declare that an extraordinary occasion requires the Congress of the United States to convene at the Capitol in the city of Washington on Monday, the 26th day of July 1948, at 12 o'clock noon, of which all persons who shall at that time be entitled to act as Members thereof are hereby required to take notice.

In witness whereof, I have hereunto set my hand and caused to be affixed the great seal of the United States.

Done at the city of Washington this 15th day of July, in the year of our Lord 1948, and of the independence of the United States of America the one hundred and seventy-third.

HARRY S. TRUMAN.

By the President:
    G. C. MARSHALL,
        Secretary of State.

CALL OF THE ROLL

Mr. WHERRY. I suggest the absence of a quorum.

The PRESIDENT pro tempore. The clerk will call the roll.

The Chief Clerk called the roll, and the following Senators answered to their names:

| | | |
|---|---|---|
| Aiken | Hickenlooper | O'Daniel |
| Baldwin | Hill | O'Mahoney |
| Barkley | Hoey | Pepper |
| Brewster | Holland | Reed |
| Brooks | Jenner | Revercomb |
| Butler | Johnson, Colo. | Robertson, Va. |
| Byrd | Johnston, S. C. | Robertson, Wyo. |
| Cain | Kem | Russell |
| Capehart | Kilgore | Saltonstall |
| Capper | Knowland | Smith |
| Connally | Langer | Sparkman |
| Cooper | Lodge | Stennis |
| Cordon | Lucas | Stewart |
| Donnell | McCarthy | Taft |
| Downey | McClellan | Taylor |
| Eastland | McFarland | Thomas, Okla. |
| Ecton | McGrath | Thomas, Utah |
| Ellender | McMahon | Thye |
| Ferrall | Magnuson | Tobey |
| Ferguson | Martin | Umstead |
| George | Maybank | Vandenberg |
| Green | Millikin | Watkins |
| Gurney | Moore | Wherry |
| Hatch | Murray | Wiley |
| Hawkes | Myers | Williams |
| Hayden | O'Conor | Young |

Mr. WHERRY. I announce that the Senator from Minnesota [Mr. BALL], the Senator from Ohio [Mr. BRICKER], the Senator from Delaware [Mr. BUCK], the Senator from South Dakota [Mr. BUSHFIELD], the Senator from Vermont [Mr. FLANDERS], the Senator from Oregon [Mr. MORSE], and the Senator from Iowa [Mr. WILSON] are necessarily absent.

The Senator from New Hampshire [Mr. BRIDGES] is detained on official business.

The Senator from Idaho [Mr. DWORSHAK] is absent on official state business.

The Senator from New York [Mr. IVES] is absent because of illness in his family.

The Senator from Nevada [Mr. MALONE] is absent on official committee business of the Committee on Public Works.

Mr. LUCAS. I announce that the Senator from New Mexico [Mr. CHAVEZ] is unavoidably detained.

The Senator from Arkansas [Mr. FULBRIGHT], the Senator from Nevada [Mr. McCARRAN], the Senator from Tennessee [Mr. McKELLAR], the Senator from Maryland [Mr. TYDINGS], and the Sena-

tor from New York [Mr. WAGNER] are necessarily absent.

The PRESIDENT pro tempore. Seventy-eight Senators having answered to their names, a quorum is present.

THE JOURNAL

Mr. WHERRY. Mr. President, I ask unanimous consent that, without reading, the Journal of the proceedings of the Senate for the calendar days Friday, June 18, Saturday, June 19, and Sunday, June 20, 1948, be approved.

The PRESIDENT pro tempore. Without objection, the order is made.

ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED AFTER ADJOURNMENT

Subsequent to the adjournment of the Senate on June 20, 1948, the President pro tempore, under the authority of House Concurrent Resolution 219, signed the following enrolled bills and joint resolutions, which had previously been signed by the Speaker of the House of Representatives:

S. 165. An act for the relief of Doris E. Snyder;

S. 418. An act to provide for water-pollution-control activities in the Public Health Service of the Federal Security Agency, and in the Federal Works Agency, and for other purposes;

S. 595. An act to provide that the rates of compensation for disabilities incurred in active military or naval service other than in a period of war service shall be equal to 80 percent of the rates payable for similar disabilities incurred during active service in time of war;

S. 1263. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes;

S. 1260. An act to create a commission to hear and determine the claims of certain motor carriers;

S. 1322. An act to provide a Federal charter for the Commodity Credit Corporation;

S. 1623. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State;

S. 1715. An act for the relief of Archie Hamilton and Delbert Hamilton;

S. 1717. An act for the relief of the estate of William R. Stigall, deceased;

S. 1966. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III;

S. 2217. An act conferring jurisdiction upon the Court of Claims of the United States to hear, determine, and render judgment upon the joint claims of Silas Mason Co., Inc., Walsh Construction Co., and Atkinson-Kier Co.;

S. 2343. An act to authorize for a limited period of time the admission into the United States of certain laborers during certain periods for permanent residence in the United States.

[CHAPTER 644]

AN ACT

To codify and enact into law Title 3 of the United States Code, entitled "The President".

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That Title 3 of the United States Code, entitled "The President", is codified and enacted into positive law and may be cited as "3 U. S. C., § ——", as follows:

## TITLE 3—THE PRESIDENT

Chap.                                                                      Sec.
1. PRESIDENTIAL ELECTIONS AND VACANCIES_____ 1
2. OFFICE AND COMPENSATION OF PRESIDENT_____ 101
3. PROTECTION OF THE PRESIDENT; THE WHITE HOUSE POLICE_____ 201

CHAPTER 1—PRESIDENTIAL ELECTIONS AND VACANCIES

Sec.
1. Time of appointing electors.
2. Failure to make choice on prescribed day.
3. Number of electors.
4. Vacancies in electoral college.
5. Determination of controversy as to appointment of electors.
6. Credentials of electors; transmission to Secretary of State and to Congress; public inspection.
7. Meeting and vote of electors.
8. Manner of voting.
9. Certificates of votes for President and Vice President.
10. Sealing and endorsing certificates.
11. Disposition of certificates.
12. Failure of certificates of electors to reach President of Senate or Secretary of State; demand on State for certificate.
13. Same; demand on district judge for certificate.
14. Forfeiture for messenger's neglect of duty.
15. Counting electoral votes in Congress.
16. Same; seats for officers and Members of two Houses in joint meeting.
17. Same; limit of debate in each House.
18. Same; parliamentary procedure at joint meeting.
19. Vacancy in offices of both President and Vice President; officers eligible to act.
20. Resignation or refusal of office.

## CHAPTER 1—PRESIDENTIAL ELECTIONS AND VACANCIES

### TIME OF APPOINTING ELECTORS

§ 1. The electors of President and Vice President shall be appointed, in each State, on the Tuesday next after the first Monday in November, in every fourth year succeeding every election of a President and Vice President.

### FAILURE TO MAKE CHOICE ON PRESCRIBED DAY

§ 2. Whenever any State has held an election for the purpose of choosing electors, and has failed to make a choice on the day prescribed by law, the electors may be appointed on a subsequent day in such a manner as the legislature of such State may direct.

### NUMBER OF ELECTORS

§ 3. The number of electors shall be equal to the number of Senators and Representatives to which the several States are by law entitled at the time when the President and Vice President to be chosen come into office; except, that where no apportionment of Representatives has been made after any enumeration, at the time of choosing electors,

June 25, 1948
[H. R. 2431]
[Public Law 771]

Title 3, U. S. Code.
Codification and enactment into positive law.

*Infra.*
*Post, p. 672.*
*Post, p. 676.*

[CHAPTER 645]

AN ACT

To revise, codify, and enact into positive law, Title 18 of the United States Code, entitled "Crimes and Criminal Procedure".

June 25, 1948
[H. R. 3190]
[Public Law 772]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That Title 18 of the United States Code, entitled "Crimes and Criminal Procedure", is hereby revised, codified, and enacted into positive law, and may be cited as "Title 18, U. S. C., § ——", as follows:

Title 18, U. S. Code.
Codification and enactment into positive law.

TITLE 18—CRIMES AND CRIMINAL PROCEDURE

| Part | | Sec. | |
|---|---|---|---|
| I. | Crimes | 1 | *Infra.* |
| II. | Criminal Procedure | 3001 | *Post*, p. 813. |
| III. | Prisons and Prisoners | 4001 | *Post*, p. 847. |
| IV. | Correction of Youthful Offenders | 5001 | *Post*, p. 858. |

PART I—CRIMES

| Chapter | | Sec. |
|---|---|---|
| 1. | General provisions | 1 |
| 3. | Animals, birds and fish | 41 |
| 5. | Arson | 81 |
| 7. | Assault | 111 |
| 9. | Bankruptcy | 151 |
| 11. | Bribery and graft | 201 |
| 13. | Civil rights | 241 |
| 15. | Claims and services in matters affecting government | 281 |
| 17. | Coins and currency | 331 |
| 19. | Conspiracy | 371 |
| 21. | Contempts constituting crimes | 401 |
| 23. | Contracts | 431 |
| 25. | Counterfeiting and forgery | 471 |
| 27. | Customs | 541 |
| 29. | Elections and political activities | 591 |
| 31. | Embezzlement and theft | 641 |
| 33. | Emblems, insignia, and names | 701 |
| 35. | Escape and rescue | 751 |
| 37. | Espionage and censorship | 791 |
| 39. | Explosives and combustibles | 831 |
| 41. | Extortion and threats | 871 |
| 43. | False personation | 911 |
| 45. | Foreign relations | 951 |
| 47. | Fraud and false statements | 1001 |
| 49. | Fugitives from justice | 1071 |
| 51. | Homicide | 1111 |
| 53. | Indians | 1151 |
| 55. | Kidnaping | 1201 |
| 57. | Labor | 1231 |
| 59. | Liquor traffic | 1261 |
| 61. | Lotteries | 1301 |
| 63. | Mail fraud | 1341 |
| 65. | Malicious mischief | 1361 |
| 67. | Military and Navy | 1381 |
| 69. | Nationality and citizenship | 1421 |
| 71. | Obscenity | 1461 |
| 73. | Obstruction of justice | 1501 |
| 75. | Passports and visas | 1541 |
| 77. | Peonage and slavery | 1581 |
| 79. | Perjury | 1621 |
| 81. | Piracy and privateering | 1651 |
| 83. | Postal service | 1691 |
| 85. | Prison-made goods | 1761 |
| 87. | Prisons | 1791 |
| 89. | Professions and occupations | 1821 |
| 91. | Public lands | 1851 |
| 93. | Public officers and employees | 1901 |
| 95. | Racketeering | 1951 |

[CHAPTER 646]

AN ACT

To revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary".

June 25, 1948
[H. R. 3214]
[Public Law 773]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That title 28 of the United States Code, entitled "Judicial Code and Judiciary" is hereby revised, codified, and enacted into law, and may be cited as "Title 28, United States Code, section —", as follows:

Title 28, U. S. Code.
Codification and enactment into law.

# TITLE 28, JUDICIARY AND JUDICIAL PROCEDURE

| Part | | Sec. | |
|------|--|------|--|
| I. | Organization of courts | 1 | *Infra.* |
| II. | United States attorneys and marshals | 501 | *Post,* p. 909. |
| III. | Court officers and employees | 601 | *Post,* p. 913. |
| IV. | Jurisdiction and venue | 1251 | *Post,* p. 927. |
| V. | Procedure | 1651 | *Post,* p. 943. |
| VI. | Particular proceedings | 2201 | *Post,* p. 954. |

## PART I—ORGANIZATION OF COURTS

| Chapter | | Sec. |
|---------|--|------|
| 1. | Supreme Court | 1 |
| 3. | Courts of appeals | 41 |
| 5. | District courts | 81 |
| 7. | Court of Claims | 171 |
| 9. | Court of Customs and Patent Appeals | 211 |
| 11. | Customs Court | 251 |
| 13. | Assignment of judges to other courts | 291 |
| 15. | Conferences and councils of judges | 331 |
| 17. | Resignation and retirement of judges | 371 |
| 19. | Distribution of reports and digests | 411 |
| 21. | General provisions applicable to courts and judges | 451 |

## CHAPTER 1—SUPREME COURT

Sec.
1.   Number of justices; quorum.
2.   Terms of court.
3.   Vacancy in office of Chief Justice; disability.
4.   Precedence of associate justices.
5.   Salaries of justices.
6.   Records of former court of appeals.

### § 1.  Number of justices; quorum

The Supreme Court of the United States shall consist of a Chief Justice of the United States and eight associate justices, any six of whom shall constitute a quorum.

### § 2.  Terms of court

The Supreme Court shall hold at the seat of government a term of court commencing on the first Monday in October of each year and may hold such adjourned or special terms as may be necessary.

### § 3.  Vacancy in office of Chief Justice; disability

Whenever the Chief Justice is unable to perform the duties of his office or the office is vacant, his powers and duties shall devolve upon the associate justice next in precedence who is able to act, until such disability is removed or another Chief Justice is appointed and duly qualified.

### § 4.  Precedence of associate justices

Associate justices shall have precedence according to the seniority of their commissions.  Justices whose commissions bear the same date shall have precedence according to seniority in age.

UNITED STATES DISTRICT COURT
FOR THE
JUDICIAL DISTRICT OF COLUMBIA

ARISTEDE M. JOHNSON §
§
     Petitioner/Plaintiff, §
§
vs. §
§
MICHAEL MUKASEY, ATTORNEY §
GENERAL OF THE "UNITED §
STATES OF AMERICA," §
§
and §
§
HARLEY G. LAPPIN, DIRECTOR §
FOR THE BUREAU OF PRISONS, §
§
     Respondent(s)/Defendant(s). §
§
§

RE: No. **4:96CR-00176-001**

ADMINISTRATIVE
AND
QUASI-JUDICIAL
NOTICE

     COMES NOW, Aristede Johnson pro-se, in want of counsel, and submit this "**Judicial Notice**" to appraise the court of the following by and through said notice:

1.

     Subsection §2255 of Title 28 of the United States Code, is in applicable and without force or effect of law where it is shown not to have been enacted by Congress, into Federal Law. The Congres sional Record, Vol-94 Part 7 (June 15, 1948 to June 19, 1948) page 8829-9169, and Vol-94 Part 8, (July 26, 1948 to December 31, 1948) reveal that Congress was not assembled in session on the date(s) that Title 3, 6, 8, 18, 21, 28, 46, and 48 are purported to have been enacted into law by Congress.

//////////

08 0850
**FILED**

MAY 14 2003

**Clerk, U.S. District and**
**Bankruptcy Courts**

///// - 1    SHOW CAUSE

3.

That in the nature of **Adam v. United States**, DK. No. 97-2263 (2nd. Cir. 1998); and **Benito Martinez**, Dk. No.             (D.C. Columbia 2007), the court is compelled to entertain the instant pleading as submitted and to not attempt to construe or concert the pleading into any other statutory provision.  See, **United States v. Margan**, 346 U.S. 502, 505 (1954).

4.

That the Petitioner sets forth the following with Incorporated Points and Authorities:

(a)  The jurisdiction of Federal Courts is defined in the Constitution at Article III for judicial courts, in Article I for Legislative courts, and in Article IV for territorial courts.  Some courts created by Acts of Congress have been referred to as "Constitutional Courts," where others are  regarded as "Legislative Tribunals" 28 U.S.C. §88 **District Court of Columbia**, Act of June 7, 1934, 48 Stat. 926, and Act of June 25, 1936, 49 Stat. 1921, provided that the Court of Appeals of the District of Columbia, the Supreme Court, and District Court of the United States for the District of Columbia, are shown to be Constitutional Courts created under Article III of the Constitution. See, **O'Donoghue v. United States**, 289 U.S. 516 (1933), 77 L.Ed. 1356, 53 S.Ct. 74, **Mookin vs. United States**, 303 U.S. 201 at 205 (1938), 82 L.Ed 748, 58 S.Ct. 543.  The **Federal Trade Commission vs. Klesner**, 274 U.S. 145 (1927) and **Claiborne-Annapollis Ferry Co. vs. United States**, 285 U.S. 182 (1932).

(b)  That, defense counsel failed ab initio to raise or challenge any of the issues presented herein.

(c)  That the Petitioner is in custody for an act not done or com mitted in pursuance of an Act of Congress or an order, process, judgment or decree of a court or judge of the United States.  And he is in custody in violation of the Constitution and the laws or treaties of the United States (28 U.S.C. §2241(c)(2)(3)).

(d)  That the federal statutory provisions under which the Petitioner is charged, have not been promulgated in either the Federal Register or the Federal Regualtions, thus the legitimate application of such statutory provisions are restricted to application over federal government

///// - 2

(e)  That the government has failed ab initio to establish federal subject amtter jurisdiction, where it has failed to charge the sine qua non, an alleged violation of the Federal Interstate Commerce Statute, as a prerequisite to the subsequent charged offense.

5.

That, the Petitioner now shows this Honorable Court that the Federal Government lacked legislative, territorial, or admiralty jurisdiction over the locus in quo, and also lacked the Constitutional or Congressional authority to reach prohibitive acts alleged to be criminal in nature, which were committed well within the borders of the sovereign state.

## INEFFECTIVE ASSISTANCE OF COUNSEL

That, defense counsel failed ab initio to raise or challenge the government s lack of **Federal Legislative-Territorial or Admiralty Jurisdiction** over the locus in quo. The Petitioner argues that there is no presumption in favor of jurisdiction, where the basis for jurisdiction must be affirmatively shown on the face of the record. See, Hartford v. Davies, 16 S.Ct. 1051 (1896). The exclusive legislative jurisdiction of the federal governemnt is not addressed in principle to subject matter, but to geographical location. See, **United States v. Beavens**, 16 U.S. (3 Wheat) 336 (1818). It is axiomatic that the prosecution must always prove (legislative, territorial or admiralty) jurisdiction over the geographical location where the alleged prohibitive acts were purported to have been committed, otherwise a conviction could not be sustained. See, **United States v. Benson**, 495 F.2d 481 (1946). Federal criminal jurisdiction is never presumed, and must always be proven, and can never be waived. See, **United States v. Rogers**, 23 F. 658 (DC Ark. 1885). In a criminal prosecution where the federal government is a moving party it must not only establish ownership of the property upon which the crimes allegedly occurred but they must also produce documentation that the state has ceded the jurisdiction to that property to them (view of the Supreme Court) in **Fort Leavenworth Railroad v. Iowa**, 114 U.S. 525 (1885). No jurisdiction exists in the United States to enforce federal criminal laws until consent to accept jurisdiction over acquired lands have been published

and filed on behalf of the United States as provided and filed in 40
U.S.C. §252, and the fact that the state authorized the federal govern-
ment to take and exercise jurisdiction was immaterial.  See, Adams v.
United States, 319 U.S. 312, 63 S.Ct. 1122, 87 L.Ed.1421 (1943).

7.

The distinction that jurisdiction is more than a technical concept
and is a Constitutional requirement.  See, **United States v. Johnson**,
337 F.2d 180 (afrmd.)  86 S.Ct. 749, 383 U.S. 169, 15 L.Ed. 681 (cert.
denied) 87 S.Ct. 44, 134 and at 385 U.S. 846, 17 L.Ed.2d 117.  In the
United States, there are two separate and distinct kinds of jurisdiction:
the jurisdiction of the sstates within their own territorial boundaries,
and then Federal jurisdiction.  Broadly speaking, the state jurisdiction
encompasses the legislative power to regulate control and govern real
and personal property, individuals, and enterprises within the territ-
orial boundaries of any given state.  In contrast, Federal jurisdiction
is extremely limited:  in July of 1776, after declaring their independ-
ence, the New States possessed all their sovereignty, power, and
jurisdiction over all soil and people in their respective territorial
limits.  This condition of supreme sovereignty of each state over all
property and persons within the borders thereof continued notwithstanding
the adoption of the Article of Confederation.  In Article II, it is ex-
pressly stated:

> "Each state retains its sovereignty freedom and independence,
> and every power, of jurisdiction and right which is not by
> this Confederation, expressly delegated to the United States,
> In Congress assemble."

8.

As the history of the Confederation Government has shown each state
was indeed sovereign and independent to the degree that it made the Cen-
tral Government created by the confederation fairly ineffectual.  These
defects of the Confederation Government strained the relation between
and among the states and the remedy became calling a  Constitutional
Convention, the representatives which assembled at Philadelphia in May
of 1787 to attend the Constitutional Convention met for the primary
purpose of improving the commercial relations among the states, although

diction of the **Article of Confederation.** The essence of this retention of each state's jurisdiction is embodied in the Constitution at Article I, Section 8 clause 17 of the Constitution of the United States of America, which reads as follows:

> "To exercise exclusive legislation in all cases whatsoever over
> such districts (not exceeding Ten Miles Square) as may be cession
> of particular states, and acceptance of Congress becomes the seat
> of the government of the United States, and to exercise like auth-
> ority over places purchased by the consent of the legislature
> of the states in which the same shall be for the erection of forts,
> magazines, arsenals, dock-yards and other needful buildings."

9.

The reason for the inclusion of this clause in the Constitution was and is obvious. Under the **Article of Confederation,** the states retain full and complete jurisdiction over the lands and persons within their borders. Since the time of the ratification and implementation of the present Constitution of the United States, the United States Supreme Court and all lower courts have had many opportunities to con- strue and apply these provisions of the Constitution. The essence of all these decisions is that the states of this Nation have exclusive jurisdiction of property and persons located within their borders, excluding such land and persons residing thereon which have been ceded to the United States. Perhaps one of the earliest decisions on this point was in the **United States v. Beavens,** 16 U.S. Wheat 336 (1818). This case involved a federal prosecution for murder committed onboard the warship, Independence, anchored in the harbor of Boston, Massach- usettes, the defense argued that only the state had jurisdiction to prosecute and argued that the federal circuit courts had no jurisdiction of this crime supposedly committed within the Federal Admiralty juris- diction. In the argument before the Supreme Court, counsel for the United States admitted as follows:

> " The exclusive jurisdiction which the United States have in
> forts, dock-yards, ceded to them is derived from express
> assent of the states by whom the cessions are made. It could
> be derived in no other manner; because without it, the author-
> ity of the states would be supreme and exclusive therein."
> 3 Wheat at 350, 351

In holding that the state of Massachusettes had no jurisdiction over the crime the court held:

> "What then is the extent of jurisdiction which a state possess?"
> "We answer, without hesitation the jurisdiction of a state is
> co-extensive with it's territory, co-extensive with it's leg-
> islative power." 3 Wheat at 386, 387
> "It is observable that the power of exclusive legislation (which
> is jurisdiction) is united with cession of territory, which is
> to be the free act of states. It is difficult to compare the
> two sections together, without feeling a conviction not to be
> strengthened by any commentary on them, that in describing the
> judicial power, the framers of our Constitution had not in view
> any cession of territory or, which is essentially the same of
> general jurisdiction." 3 Wheat at 388.

11.

Thus in Beavens, the court established a principle that Federal jurisdiction extends only over the areas wherein it possesses the power of exclusive legislation, and this is a principle incorporated into all subsequent decisions regarding the extent of Federal jurisdiction. To hold otherwise would destroy the purpose, intent and meaning of the entire Constitution of the United States. One year later the Supreme Court of New York was presented with the same issue, of whether the state of New York had jurisdiction over a murder committed at Fort Niagara, a Federal Fort. In People vs. Godfrey, 17 Johns 225 N.Y. (1819), that court held that the fort was subject to the juris- diction of the state since the lands therefore had not been ceded to the United States, the rationale of it's opinion stated:

> "To oust this state of its jurisdiction to support and main-
> tain its laws and to punish crimes, it must be shown that an
> offense committed within the acknowledged limits of the state,
> is clearly and exclusively cognizable by the laws and courts
> of the United States. In the case already cited Chief Jstice
> Marshall observed that to bring the offense within the juris-
> diction of the courts of the union, it must have been committed
> out of the jurisdiction of any state." It is not (he says)
> the offense committed but the place in which it is committed,
> which must be out of the jurisdiction of the state.
> 17 Johns, at 233 (emphasis added)

///// - 5

12.

The case relied upon by this court was the **United States v.** Beavens, supra. At about the same time that the New York Supreme Court rendered it's opinion in **Godfrey**, a similar situation was beforea Federal Court, the only difference being that murder was committed in and occurred on lands which had been ceded to the United States. In the **United States vs. Cornell**, 2 Manson 60, 1 Cir. (1819), the court held that the  case fell within Federal jurisdiction, describing such jurisdiction as follows:

> "But although the United States may well purchase and hold lands
> for public purpose within the territorial limits of a state, this
> does not of itself oust the jurisdiction or sovereignty of such
> state over lands purchased.  It remains until the state has relin-
> guished its authority over the lands either expressly or by
> necessary implications.  When therefore a purchase of land for any
> of these purposes is made by the National Government and the state
> legislature has given its consent to the purpose, the lands so
> purchased by the legislation of Congress and the state jurisdiction
> is completely ousted."  2 Manson at 63

13.

Almost 18 years later, U.S. Supreme Court again was presented a case involving the distinction between state and federal jurisdiction. In **New Orleans v. United States**, 35 U.S. (10 Pet.) 662 (1836). The United States claimed title to property in New Orleans likewise claimed by the city.  After holding that, title to the subject lands was owned by the city, the court addressed the question of federal jurisdiction and stated:

> "Special provisions is made in the Constitution for the cession
> of jurisdiction from the state over places where the Federal
> Government shall establish forts, or other military works.  And
> it is only in these places or in the territories of the United
> States where it can exercise a general jurisdiction."
> 10 Pet. at 737.

14.

In **New York v. Miln**, 36 U.S. (11 Pet.) 102 (1837), in the question before the court involved the attempt by the city of New York to asses penalties against the master of a ship for failure to make a report

///// - 7

as to the persons his ship brought to New York.  As against the master's
contention that the act was unconstitutional and that New York had no
jurisdiction in the matter, the court held:

> "If we look at the places of its operation, we find it to be within
> the territory, and therefore, within the jurisdiction of New York.
> If we look at the person on whom it operates he is found within
> the same territorial jurisdiction." 36 U.S. at 135.

> "They are these:  That a state has the same undeniable and unlimited
> jurisdiction over all persons and things within its territorial
> limits, as any foreign nation, where that jurisdiction is not sur-
> rendered or restrained by the Constitution of the United States.
> That by virtue of this it is not only the right, but the burden
> and solemn duty of a state, to advance the safety, happiness and
> prosperity of its people and to provide for its general welfare by
> any and every act of legislation which it may deem to be conductive
> to these ends; where the power over the particular subject, or the
> manner just stated.  That all those powers which relate to merely
> municipal legislation, or what may perhaps more properly be call-
> ed internal policy are not thus surrendered or restrained and that
> consequently in relation to these the authority of a state is
> completely unqualified and exclusive." 36 U.S. at 139.

## 15.

Some eight years later, in **Pollar v. Hagan**, 44 U.S. (3 How.) 212
(1845), the question of Federal jurisdiction was once again before the
court.  This case involved a contest of the title of a real property,
with one of the parties claiming a right to the disputed property via
U.S. patent; the lands in question were situated in Mobile, Alabama
adjacent to Mobile Bay, the court held:

> "We think a proper examination of this subject will show that the
> United States never held any Municipal sovereignty, jurisdiction
> or right of soil in and to territory of which Alabama or any of
> the new states were formed." 44 U.S. at 221.
> "Because the United States have no Constitutional capacity to
> exercise Municipal jurisdiction, sovereignty or eminent domain
> the limits of a state or elsewhere, except in case which it is
> expressly granted." 44 U.S. 228, 229
> "Alabama is therefore entitled to the sovereignty and jurisdiction
> over all the territory within her limits, subject to the Common
> Law." 44 U.S. at 228, 229.

16.

The single most important case regarding the subject of federal jurisdiction appears to be **Fort Leavenworth R. Co. v. Iowa**, 114 U.S. 525 (1885) 995, which set forth the law on this point of federal juris- diction, fully.  There the railroad company's property, which passes through, Fort Leavenworth federal enclave was being subject to taxation by Kansas, and the company claimed an exemption from the state taxation. In holding that the company is properly taxed, the court carefully ex- plained federal jurisdiction within the states:

> "The consent of the state to the purchase of lands within them for
> the special purpose named is however, essential, under the Con-
> stitution to the transfer of the jurisdiction and dominion.  Where
> lands are acquired without such consent, the possession of the
> United States, political jurisdiction be ceded to them in some other
> way is simply that of an ordinary proprietor.  The property in that
> case, unless used as a means to carry out the purpose of government
> is subject to the legislative authority and control of the states
> equally with the property of private individuals."  114 U.S. at 531

17.

The Constitution for the United States created a government, which has jurisdiction over certain enumerated subject matter.  It is only in these areas that Congress can enact laws, and when they do, the Federal Courts are to enforce the law.  But then laws do not come from a en- umerated power, the Federal Courts are to prevent the U.S. Government or Congress from applying them.

18.

The Federal Constitution prescribes what the "jurisdiction" of the Federal Government is by the enumerated powers.  That government can regulate foreign and interstate commerce, fix the standards of weights and measurements, establish uniform laws on bankruptcies, coin money and provide for the punishment of counterfeiting of coins and securities of the United States, protect the arts and sciences by copyrights and patents, punish for piracies and felonies committed on the high seas, raise and support an army and navy, and lay and collect taxes by appoint- ment, and indirect taxes by exercise, duties or imports.

///// - 9

Ed. 941, 950-51 (1924).

23.

By "jurisdiction" is meant the authority of the Federal Courts to
hear and decide a matter.  Thus, it is even more correct to say that,
"The Federal Courts have no jurisdiction of Common Law Offenses, and
there is no jurisdiction of Common Law offenses, and there is no ab-
stract pervading principal of the Common Law of the Union under which
we (Federal Courts) can take jurisdiction."  **State of Pennsylvania v.
Wheeling E. Bridge Co.**, 13 How. (54 U.S.) 518, 563 (1851).

24.

If Congress tries to make a Common Law offense a crime (such as
libel, drugs, theft, burglary, murder, kidnapping, arson, rape, abor-
tion, assault, fraud, etc.), which have no relation to an enumerated
power, it would simply be an "unconstitutional" act.  Congress can de-
clare nothing to be a crime except where it is based upon a delegated
power.  Thus, the only thing that can be a crime against the "United
States" is that which comes from the U.S. Constitution.  These concepts
were stated early on by the U.S. Supreme Court:

> In relation to crimes and punishments, the objects of the delegat-
> ed power of the United States are enumerated and fixed.  Congress
> may provide for the punishment of counterfeiting the securities
> and current coin of the United States, and may define and punish
> piracies and felonies committed on the high seas, and offenses
> against Article §8***, but there is no reference to a Common
> Law authority.  Every power is [a] matter of deffinate and pos-
> itive grant; and the very powers that are granted cannot take effect
> until they are exercised through the medium of law.  The United
> States **v. Worrall**, 2 Dall. (2 U.S.) 384, 391 (1798).

25.

A Constitution is not to be made to mean one thing at one time,
and another at some subsequent time when the circumstances have so
changed, as perhaps to make a different rule in the case desireable.
A principal share of the benefit expected from written Constitution
would be lost if the rules they establish were so flexible as to bend
to circumstance or be modified by public opinion.  [A] court of legis-
lature which should allow a change in public sentiment to influence
it in giving to written constitution and construction not warranted
by the intention of its founders, would be justly chargeable with

by the intention of its founders, would be justly chargeable with
reckless disregard of Official Oath (28 U.S.C. §453, 18 U.S.C. §1621)
and public duty; and if its course could become a precedent these
instruments would be of little avail. What court is to do, therefore,
is to declare the law as written. **T.M. Cooley: A Treatise on the
Constitutional Limitation,** 5th Ed., pg. 54, 55, rather than be swayed
by political ambition and the unlawful unsurpation of police powers.
Chief Justice John Marshall stated:

> "We |judges[ have no more right to decline the exercise of juris-
> diction, which is given, than to usurp that which is not given.
> The one or the other would be treason to the Constitution."
> **Cohens v. Virginia,** 6 Wheat. (19 U.S.) 264, 404 (1821).

26.

The district court erred in not determining jurisdiction prior
to entertaining the cause.

### STANDARD OF REVIEW

The court's duty to resolve the jurisdiction of the court regard-
less of who brings the action, the court must make a legal finding as
to it's authority to take venue and jurisdiction, before the court
moves to entertain the cause before it. See, 20 Am. Jur. 2d §60, 377

### §60 POWER AND DUTY TO DETERMINE JURISDICTION

A court has the power and duty to examine and determine whether
or not it has jurisdiction over the subject matter presented to it,
and its determination being subject, of course, to appellate review.
This question should be considered before it looks at other matters
involved in the case, such as whether the parties are properly before
the court. It may, and must do this on it's own motion, without wait-
ing for the question of it's jurisdiction to be raised by any of the
parties involved in the proceedings.

### §65 EFFECT OF LACK OF JURISDICTION

"The general rule is that proceedings conducted or decisions made
by a court are legally void when there is an absence of jurisdiction
over the subject matter.

A court devoid of jurisdiction over the case cannot make a decision in favor of either party, cannot dismiss the complaint for failure to state a claim and cannot render a summary judgment, as a decision would be on the merits of the action.  It can only dismiss the case for want of jurisdiction.  However, a court can still set aside orders it made before the want of jurisdiction was discovered, and a judgment by a court without jurisdiction over subject matter can be set aside and vacated at any time by the court that rendered it."  (In part).

27.

The Petitioner asserts that the district court lost its jurisdiction, once it failed to determine jurisdiction to hear this case at bar before proceeding with sentencing and/or trial.

28.

The question of challenging the court, and the United States jurisdiction, was never waived by this Petitioner, it is well settled in the law that when jurisdiction of the court and of the United States is challenged, thus, " Onus Probandi is the actor."  Onus Probandi burden of providing the burden of proof, " The strict meaning of the Onus Probandi, " is that, if no evidence is adduced by the party on whom the burden is cast, the issue must be found against him, Davis v. Rogers, 1 Houst (del.) 44.  "Where jurisdiction is challenged it must be proved," Hagen v. Lavine, 415 U.S. 528 (1974).  Because it is not sufficient that jurisdiction of the United States Courts may be inferred argumentatively from averments in the pleadings it follows that the necessary factual predicate may not be gleaned from the briefs and arguments themselves; this principal of federal jurisdiction applies whether that the case is at the trial stage or at the appellate stage.

29.

The Petitioner asserts that the court and government has not been granted jurisdiction through the Constitution of the United States of America, to adjudicate matters beyond the legislative jurisdiction of the United States.  The courts and the government have failed to offer proof, or make findings and conclusions of law, as to the jurisdiction in the above alleged criminal action.

///// - 13

" A court cannot proceed at all in any case without jurisdiction but must announce the fact and dismiss the cause." See, Ex Parte McCardle, 7 Wall 506, 19 L.Ed. 264. Before considering each of the standings theories, it is appropriate to restate certain basic principals that limit the power of every Federal Court. Federal Courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and statutes enacted by Congress pursuant thereto. e.g. Marbury v. Madsion, 1 Cranch 137, 173-180, 2 L.Ed. 60 (1803). For that reason, every Federal Appellate Court has a special obligation to "satisfy itself not only of its jurisdiction, but also that of the lower courts in a cause under review," even though the parties are prepared to concede it. Mitchell v. Maurer, 293 U.S. 237, 244, 79 L.Ed. 338, 55 S.Ct. 162 (1934). See, dice v. Vail, 430 U.S. 327, 3331, 332 51 L.Ed.2d 376, 97 S.Ct. 1211 (1977)(standing), "and if the record discloses that the lower courts was without jurisdiction (such as in this case) this court will notice the defect, although the parties make no contention concerning it." See, Bender v. Williams Port Areas School District, 475 U. S. 534 L.Ed.2d 501, 106 S.Ct. 1326. When the lower Federal Courts lacks jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit. See, United States v. Corrick, 298 U.S. 435, 440 80 L.Ed. 1263, 56 D. Vy. 829 (1936). See also e.g., United States v. Mala, 449 U. S. 539, 547-548 n.2, 66 L.Ed. 722, 101 S.Ct. 764 (1981), City of Kenosha v. Bruno, 412 U. S. 507, 511 37 L.Ed.2d 109, 93 S.Ct. 122 (1973), Clark v. Paul Gray Inc., 306 U. S. 583, 588, 83 L.Ed. 1001 59 S.Ct. 744 (1939), St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 287-288 n.10 82 L.Ed. 845 58 S.Ct. 586 (1936). This obligation to notice defects in a court of appeals, subject matter jurisdiction, assume a special importance, when a constitutional question is presented. In such cases we have held strictly to the standing requirements to ensure that our deliberations will have benefit of adversary presentation and full development of the relevant facts. The court msut be mindful that the powers of the legislature are defined and limited and that those limits may not be mistaken or forgotten, the

///// - 14

Constitution of the United States of America has been written indeed
this is the very essence of the judicial duty.   See, **Marbury v. Madison**, 5 U. S. 137, 176-178, i Cranch 137 (1803).   See also, **Bell v. Maryland**, 378 U. S. 266, 224 (1964)(Douglas J. Concurring).   "A district
court are courts of limited jurisdiction, which has only power conferred on it by this Title under 28 U. S.C.A. Article III, and  cannot
assume jurisdiction."  See, **Standard v. Olesen**, 74 S.Ct. 768 (1954)
also, **McNutt v. G.M.**, 56 S.Ct. 789, L.Ed 1135., and **Thomson v. Gaskiel**,
62 S.Ct. 573, 83 L.Ed 111.  It is clear that federal jurisdiction does
not rest in federal, statutes that do not invest exclusive jurisdiction.
Neither statute governing courts authority nor the statute governing
the charged crime invest exclusive authority of the subject matter to
justify the abrupt (police power) removal of this Petitioner from the
State jurisdiction, by the Federal Government.  The Supreme Court in
**Housenbaum v. Hauer**, 120 U. S. 450 (1887), searching the language of the
statutes to see if jurisdiction is conferred by a statue stated:

> "Here we are bound by statute and not by ya-yes, but by an
> act of Congress, which obliges us to follow the State statute
> and State practice.  The Federal courts are bound hand and foot
> and are compelled and obligated by the federal legislature to
> obey the State law."

### 30.

The Petitioner contends that such rules prevail where it appears
from the record that the court was without jurisdiction, of either
person or the subject matter.  For the record, where it appears from
the **record** that the court did not have jurisdiction of the person or
the subject matter, there is not conclusive presumption to preclude an
injury into the fact and to prevent a declaration of the invalidity of
the judgment.  A record, which affirmatively shows want of jurisdiction,
is of its self, <u>conclusive as that fact.</u>

### 31.

Moreover,  a district court judge may and must check for the courts
jurisdiction to proceed, in the pleading proceeding.  He must fo this
on his own motion without waiting for the question of lawful jurisdiction to be raised by any of the parties  involved in the proceedings.
He is charged to know that the court proceedings conducted absent
jurisdiction over the subject matter are legally void and subject to

collateral attack.  See, 45 Am. Jur. 2d. Judgment §26.  As a district
court judge charged with knowledge that jurisdiction is the authority
to hear and determine a specific case within a class over which the
court has subject matter jurisdiction.  Also awareness that his court
is subject to **Territorial limitation and cannot extend** the jurisdiction
authority which comes pursuant to an act of Congress and under which
behalf the court functions.  Knowing that the jurisdiction of this court
is limited and can be further limited by constitutional or statutory
provisions to only part of the territory of the sovereignty to which
the court belongs.  See, **American Jurisprudence 2d. Courts** §115.

32.

The district court of Petitioner's conviction is one limited and
special original jurisdiction, its action must be confined to the
particular cases, controversies, and parties over which the constitu-
tion and the laws have authorized it to act; any proceedings without
the limits prescribed is Coran Non Judice and its actions a nullity.
See, **State of Rhode Island et. al. v. Commonwealth of Mass.**, 37 U.S.
657 (1938).  The statute designating the Federal Government charges,
that if a crime does not authorize concurrent jurisdiction doctrine
to issue ancillary orders while determining their own jurisdiciton,
and to punish as criminal contempt, the violations of such orders,
even though it may later be determined that the court lacks jurisdic-
tion over the proceedings.  When a court assumes but later discovers
that it has no jurisdiction, the court must take the appropriate action
although it acted in accordance with its previous belief that it had
jurisdiction.  See, **American Jurisprudence 2d. Courts** §60 pg.377.
Jurisdiction to render a judgment in a particular case over or against
particular persons may not be presumed where the record itself shows
jurisdiction has not been acquired.  See, **Old Wayne Mut. Life Assoc.
v. McDonough**, 204 U.S. 8, 51 L.Ed. 345, 27 S.Ct. 236.  Hence a fact
connected with jurisdiction to render a judgment may not be in the
face of statements to the contrary in the record.

FAILURE TO ESTABLISH FEDERAL INTERSTATE COMMERCE NEXUS

Defense counsel was ineffective by failing to raise or challenge

the governments lack of Federal Subject Matter Jurisdiction over the
alleged prohibitive acts charged against the Petitioner.

That, defense counsel failed ab initio to raise or challenge that
the Federal Statutory Provisions under which the Petitioner is charged
failed to contain language of an Interstate Commerce Nexus.  The enum-
erated subsection under which the Petitioner is unlawfully incarcerated
and detained of his liberty, possess no language which could be construed
as importing, interposing or incorporating a Commerce Nexus.  Thus, the
language of the statute does not grant Federal Subject Matter Jurisdiction
nor grant formal notice to the accused party that he alleged violations
of **Title 18 U.S.C. §§ 371 and 18 U.S.C §§ 2**      , also invokes an un-
charged violation of the Federal Interstate Commerce Statute, even
though no prohibitive acts moved beyond the borders of the sovereign
state or across state line or international borders.  The Federal Gov-
ernment does not have a general police power, thereby the legitimate
application of **Title 18 U.S.C. §§ 371 AND 18 U.SC §§ 2**        may only be
applied if connected to an alleged violation of the Interstate Commerce
Statute through an Act of Congress.

                              35.

    Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d
252 (1960) at 857.  Supreme  Court stated that, "The essential element
was the allegation of an Interstate Commerce which provided the court
with (subject matter) jurisdiction" over the alleged prohibitive acts.
Where the instant matter is concerned, the government has failed ab
initio to establish that the prohibitive conduct of the Petitioner,
moved beyond the border of the sovereign state, thus in the clear ab-
sence of a commerce charge, the government failed to establish Federal
Subject Matter Jurisdiction over the alleged offense.

                              36.

    Under our Federal system, the "States possess primary authority for
defining and enforcing the criminal law."  See, **Brecht v. Abrahamson,
507 U.S. 123 L.Ed.2d 353, 113 S.Ct. 1710 (1930)**, quoting: **Engle v.
Issac, 456 U.S. 107, 71 L.Ed.2d 783, 102 S.Ct. 1031, 162 ALR 1330 (1945)**
(plurality opinion)  "Our National Government is one of delegated pow-
ers alone.  Under our federal system the administration of criminal
justice rests with the state except as Congress, acting within the scope

both delegate powers has created offenses against the United States." When Congress criminalizes conduct already denounced as criminal by the state it affected a change in the sensitive relation between federal and state criminal jurisdiction. **United States v. Unmans,** 410 U.S. 396 441-442, 35 L.Ed.2d 379, 93 S.Ct. 1007 (1973). Quoting, **United States v. Bass,** 404 U.S. 336, 349 30 L.Ed.2d 488, 92 S.Ct. 515 (1971). It's obvious the government would have to acknowledge that Title 18 U.S.C. §§´371 is , 18 U.S.C and §§ 2, displaces state policy in that its prohibitions is being used in every state. Titles 18 U.S.C. §§ 371 , 18 U.S.C and §§ 2 are now being used outside their scope of intended use by inappropriately over-riding state law. By imposing higher penalties and establishing mandatory penalties for the same offenses that the state already charges. The policies reflected in these provisions could legitimately be adopted by the states but they should not be imposed upon the states by Congress. By the government's use of these statutes outside their intended use we have a system that can punish the same act by different individuals with different and more selective punishmen. Thus, the abuse mentioned, defendant in the case also charges the government was selective by going outside its jurisdiction which was clearly spelled out by the 99th Congress 2d Session, of the Federal Statutory Provisions under which the Petitioner is alleged to have violated the act in question to determine, whether it applies solely within the jurisdiction of the United States. Analysis of the operative section of the act, particularly the sections at issue herein, clearly reveals that there is nothing, which indicates that the act applies anywhere but within the United States Territories and Enclaves. There is simply no statutory language expressly stating that the act applies "extra jurisdictionally." Further, the Federal Statutory Provisions which are an issue Title 18 U.S.C. §§ 371 , 18 U.S.C and §§ 2 totally fail to refer to any Act by Congress.

The Petitioner3                              37.

The Petitioner asserts prosecutorial misconduct and plain error, 52(b) F.R.C.P., in that the application was not within the scope of Rule 7(c)(1), F.R.C.P. to the indictment in which was an amendment

to cure the jurisdiction requirements; the indictment failed to explic-
itly, allege a (nexus) to commerce.  See, United States v. Knowles, 29
F.3d 947, 952 (5th Cir. 1944).

### 38.

    The Petitioner stands firm on his assertion that he was highly
prejudiced by the prosecutor, not qualifying the jurisdiction nexus
in the statute, to the Grand Jury.  The Second and Third Circuit is
record as expressing the view that "when the word or phrase is used
in the Sect. of the "Act" more than once, and the meaning is clear as
used in one place."  Meyer v. United States, 175 F.2d 45, 47 (2nd. Cir.
1949), quoting, Lewellyn v. Nunez, 573 F.2d 769 (2nd Cir. 1978), and C.
L.R. v. Ridgeway's Estates, 291 F.2d 257 (3rd. Cir. 1961).  It is elem-
entry principle of criminal pleadings, that where the definition of
an offense, whether it be common law or by statute, including generic
terms, it is not sufficient that the indictment shall charge the offense
in the same generic terms as in the definition; but it must state the
specifics it must descent to a particulars, United States v. Crikshank,
U.S. 542, 558, 23 L.Ed. 58, 593.  An indictment not framed to appraise
the defendant with reasonable certainty, of the nature of the accusation
against him, and it's jurisdiction to sustain those accusations is de-
fective, although it may follow the language of the statute.  See, United
States v. Simmons, 96 U.S. 360, 362, 24 L.Ed. 819, 820.  In an indictment
upon statute, it is not sufficient to set forth the offense in the words
of the statue, unless those words of them selves fully, directly, and
expressly, without any uncertainty or ambiguity, set forth all the elem-
ents necessary to constitute the offense intended to be punished.  See,
United States v. Carll, 105 U.S. 611, 612, 26 L.Ed. 1135, certainly
the jurisdictional nexus, constitutes one of the elements.  Undoubtedly
the language of the statute may be used in the general description of
an offense, but it must be accompanied with such a statement of the
fact and circumstance as well inform the accused of the specific of-
fense, coming under general discription with which he is charged, (an
indictment that fails to state its jurisdiction nexus in the pleadings
or statute, certainly would not be informing the accused of the above
provisions).  For similar views see, United States v. Hess, 124 U.S.

483, 487, 31 L.Ed. 516, 518, 8 S.Ct. 543; **Blitz v. United States**, 153
U.S. 308, 315, 38 L.Ed. 725, 727, 14 S.Ct. 924; **Keck v. United States**,
172 U.S. 434, 437 43 L.Ed. 505, 507, 19 S.Ct. 254; **Morissette v. United
States**, 246, 270 note 30, 96 L.Ed. 288, 304 S.Ct. 240, cf. **U.S. v.
Petrillio**, 332 U.S. 1, 10, 11, 91 L.Ed. 1877, 1884, 1885, 67 S.Ct. 1538.
That these basic principles of fundamental fairness retain their full
vitality under modern concepts of pleading and specifically under Rule
7(c) of the F.R.C.P. in this case at bar, a mere citation (such as the
government used in this case) to the applicable statute does not give
the defendant just and proper notice of the nature of the offense.
An indictment that must rely on a statutory citation does not fully
directly, and expressly, without any uncertainty or ambiguity set forth
all the elements(such as jurisdiction) necessary to constitute the offense
intended to be punished (or to sustain the charges). See, **Hamling v.
United States**, 418 U.S. 87, 117, 94 S.Ct. 1887, 2907-08, 41 L.Ed.2d
590 (1974). Furthermore, a statutory citation does not ensure that
the Grand Jury has considered and found all essential elements such
as (jurisdiction) of the offense charged. It therefore fails to satisfy
the Fifth Amendment guarantee that no person be held to answer for an
infamous crime unless of indictment of a Grand Jury. See, **United States
v. Pupo**, 841 F.2d 1235 (4th Cir. 1988) quoting, **United States v. Hooker**,
supra. at 8412 F.2d 1225 (4th Cir. 1988). As stated in **Hooker**, when
an indictment fails to include an essential element of the offense charg-
ed, it thereby fails to charge any federal offense and conviction under
the indictment may not stand. A Grand Jury in order to make the ultimate
determination, must necessarily determine, what gives the government
jurisdiction to sustain, or bring these charges. To allow the prose-
cutor, or the court to make a subsequent guess as to what was in the
minds of the Grand Jury at the time they returned the indictment would
deprive the defendant of a basic protection which guarantee of inter-
vention of a Grand Jury was designed to secure. For a defendant could
then be convicted on the basis of facts not found by a Grand Jury or
perhaps, not even presented to the Grand Jury which indicted him such
as this case now, before this court, the jurisdiction nexus needed and
required certainly was never presented to the defendant's Grand Jury.
For similar views. See, Orfield Criminal Procedure from Arrest to Appeal
243. This underlying principle is reflected by the settled rule in
the federal courts that an indictment may not be amended by resubmission

to the Grand Jury ..less the charge is merely a matter of form, Ex Parte Bain, 121 U.S. 1, 30 L.Ed. 849, 7 S.Ct. 781; **United States v. Norris,** 821 U.S. 619, 74 L.Ed. 1076, 50 S.Ct. 424; **Stirone v. United States,** 361 U.S. 212, 4 L.Ed.2d 80 S.Ct. 270. If it lies within the province of a court to amend an indictment  to suit its own notion of what ought to have been, when such allegation of a commerce nexus is not submitted to the Grand Jury, neither the government or  has the authority to amend an indictment to incorporate the crucial missing element.  The great importance which the common law attaches to an indictment by a Grand JUry, as a prerequisite to a prisoner's trial for a crime and without which the Constitution says no person shall be held to answer which may be frittered away until its value is almost destroyed.  Any other doctrine would place the rights of the citizens which were intended to be protected by this Constitutional provisin, at the mercy or control of the court or prosecuting attonrey; for if it be once held that the charges can be made by the consent of the order of the court in the body of the indictment as presented by the Grand Jury, and the prisoner can be called upon to answer to the indictment as thus changed, the restriction which the  Constitution places upon the power of the court, in regards to the prerequisite of an indictment, in reality no longer exists.  **Ex Parte Bain,** supra. (121 U.S. at 10, 13).  This court must be aware that "the very purpose of the requirement that a man be in-dicted by a Grand Jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either pro-secuting attorney or judge."  See, **Stirone v. United States,** supra. 361 U.S. at 218.

## LACK OF ADMINISTATIVE AGENCY JURISDICTION OVER LOCUS IN QUO

39.

    Defense counsel was ineffective by failing to raise or challenge that no amendment to the Constitution can be found to provide for the unbridled, nationwide application of the Federal Statutory Provisions under which the Petitioner is charged.

40.

    The Federal Constitution prescribes what the "jurisdiction" of the Federal Government is by the enumerated powers.  That government can regulate foreign and interstate commerce, fix the standards of weight and measurements. establish uniform laws on bankruptcies. coin money

. , and provide for the punishment of counterfeiting of the coins and
securities of the United States, protect the arts and sciences by
copyrights and patents, punish for piracies and felonies committed
on the high seas, raise and support an army or navy, and lay and
collect direct taxes by apportionment, and indirect taxes by exercise,
duties, or imports.

41.

The Constitution for the United States created a government which
has jurisdiction over certain enumerated subject matter.  It is only
in these areas that Congress can enact laws, and when they do, they
are to enforce the law.  But when laws do not come from an enumerated
power, the Federal Courts are to prevent the U.S. Government or Con-
gress from applying them.

42.

This is about the extent of the legitimate jurisdiction of the
Federal United States Government.  It is only in these areas, supra,
that a crime (or offense) against the Federal States" can exist,
and this is so only when Congress actually pass  law in one of these
areas.  But an act committed within a State, whether with honest
or criminal intent, cannot be made an offense against the United
States of America unless it has some relation to the execution of
a power of Congress, or to some matter within the jurisdiction of
the United States.  **United States v. Fox**, 95 U.S. 670, 672 (19877).
[T]he courts of the United States, merely by virtue of this grant
of judicial power, and in the absence of legislation by Congress,
have no criminal jurisdiction whatsoever.  The criminal  jurisdiction
of the courts of the United States is whollyrived from the statutes
of the United States.  **Manchester v. Massachusetts**, 139 U.S. 240,
262 (1890); **United States v. Flores**, 289 U.S. 137, 151 (1932).  Acts
of Congress, as well as the Constitution, must generally unite to
give jurisdiction to a particular court.  **United States v. Beford**,
27 Fed. Cas., pg. 91, 103 Case No. 15, 867 (1847).

43.

The Federal Courts only have jurisdiction in matters involving
an "offense against the United States," and nothing can be an offense
against the United States unless it is made so by a Congressional
Act pursuant to the U.S. Constitution.  There is no other source
from which Congress can get authority to make law, including the
Common Law.  Thus, it has been said that, "There is no Federal Common

///// - 22

law."

44.

But a better way of stating this is to say, "There are no Common law offenses (or crimes) against the United States." United States v. Britton, 108 U.S. 199, 206 (1882); United States v. Eaton, 144 U.S. 677, 687, (1897); United State v. Gradwell; 243 U.S. 476, 485 (1916); Donnelley v. United States, 276 U.S. 505, 511 (1927); Jerome v. United States, 92 Fed.2d 753 (1937). In other words the Common Law is not a source for criminal jurisdiction as it is in States. United States v. Grossmand, 1 Fed.2d 941, 950-951 (1924).

45.

By "jurisdiction" is meant the authority of the federal courts to hear and decide a matter. Thus, it is even more correct to say that, "The federal courts have no jurisdiction of Common Law offenses, and there is no jurisdiction of Common Law offenses, and there is no abstract pervading principle of the Common Law of the Union under which we (federal courts) can take jurisdiction." State of Pennsylvania v. The Wheeling E. Bridge Co., 13 How (54 U.S.) 518, 563 (1851).

46.

If Congress tries to make a Common Law offense a crime (such as libel, drugs, theft, burglary, kidnapping, arson, rape, abortion, fraud, etc.) having no relation to any enumerated power it would simply be an "unconstitutional" act. Congress can declare nothing to be a crime except where it is based upon a delegated power. Thus, the only thing that can be a crime against the United States is that which comes from the U.S. Constitution. These concepts were stated early on by the U.S. Supreme Court.

> "In relation to crimes and punishments, the objects of
> the delegated powers of the United States are enumerated and
> fixed. Congress may provide for the punishment of counterfeiting
> the securities and current coin of the United States, and may
> define and punish piracies and felonies committed on the high
> seas, and offenses against the law of nations. Art. §8 but
> there is no reference to a Common Law Authority. Every power
> is [a] matter of definite and positive grant; and the very powers
> that are granted cannot take effect until they are exercised
> through the medium of law. The United States v. Wortall,
> 2 Dall. (2 U.S.) 384, 391 (1798).

47.

A Constitution is not to be made to mean one thing at one time, and another at some subsequent time when the circumstances have so chang- e, as perhaps to make a different rule in the case seem desirable. A principle share of the benefit expected from written constitution would be loss if the rules they establish were so flexible as to bend to circumstances or be modified by public opinion. [A] court of legis- lature which should allow a change in public sentiment to influence it in giving to a written constitution a construction not warranted by the intention of its founders, would be justly chargeable with reck- less disregard of the official oath. (28 U.S.C. §453 - 18 U.S.C. §1621) and public duty; and if its course could become a precedent, these instruments would be of little avail. What a court is to do, therefore, is to declare the law as written. T.M. Cooley A Treaties on the Constitutional Limitations, 5th Ed., pp. 54, 55 rather than be swayed by political ambition and the unlawful usurpation of police powers. Chief Justice John Marshall stated:

> "We [Judges] have no right to decline the exercise of
> jurisdiction which is given, that to usurp that which
> is not given. The one or the other would be Treason to
> the Constitution." Cohens v. Virginia, U.S. 264. 404
> (1821).

48.

The United States Code was approved by an Act of Congress on June 30, 1926 (44 Stat. Part I). The code is assembled and revised under the supervision of "The Committee on the Judiciary of the House of Representatives." The main work of revision is done by a subcommit- tee of office of this committee called "The Office of the Law Revision Counsel of the House of Representatives." It consists of an appointed supervisor, some memeber of Congress, some volunteer lawyers, and persons from West Publishing of St. Paul Minnesota.

49.

When the U.S. Code was first published, it never was stated to be the official laws of the United States. Rather, it was stated

that the Code was a "Restatement" of law, or was only "prima facie
evidence of the laws of the United States." On this matter the court
stated:

> The United States Code was not enacted as a statute,
> nor can it be construed as such. It is only a prima facie
> of the statement of the statute.... If construction is
> necessary, recourse must be had to the original statutes
> themselves. **Five Flags Pig Line Co. v. Dept. of Trans-
> portation,** 854 F.2d 1438, 1440 (1988); **Stephan v. United
> States,** 319 U.S. 415, 426 (1943), 44 Stat. Part I, pre-
> face; **Murrell v. Western Union Tele. Co.,** 160 F.2d 787
> (1947); **United States v. Mercur Corp.,** 83 F.2d 178, (1936).

50.

This tells us that the United States Code, as originally establish-
ed, was not on an equal plain with the "original statutes" or the
**Statutes at Large.** Thus, the Code was not **True Law.** With the state
of regular use of U.S. Code, numerous problems arose in that it con-
tained mistakes, errors and inconsistencies as compared to the Stat-
utes at Large. Thus, in 1947, Congress enacted several of the Titles
into "positive law," such as the Act: "To codify and enact into
positive law, Title 1 of the United States Code," in doing so they
devised some new terminology; which is set out under 61 Stat. 633,
638-644; 1 U.S.C. §204(a).

51.

Look back at the cases cited, which state that the criminal juris-
diction of the United States exists only by Acts of Congress pursuant
to the Constitution. In the nature of a question of law, if a federal
court were asked whether the Code cited in an indictment is an Act
of Congress, the court could not sightfully say it is, because the
Code citation contains no Congressional enacting for that citation
as required by 61 Stat. 633, 634 §101. If no such enacting clause
appears on the face of the law, it is not an Act of Congress. The
argument in such a case is that the indictment does not set forth
a case arising under the Constitution, as there is no Act of Congress
with a duly required enacting clause. Thus, there is no subject mat-
ter jurisdiction pursuant to the federal judicial power defined in
the nature of Article III, §2 of the Federal Constitution.

52.

No where does it say in the Code, or in the pronouncements by
Congress or the Courts, that the laws in the U.S. Code are Acts of
Congress.  In fact, the Code is always regarded as something different
from the Statutes at Large.

> But no one denies that the official source to find the
> United States law is the **Statutes at LArge** and the Code
> is only prima facie evidence of such laws.

53.

An invalid, unconstitutional or non-existnet statute affects the
validity of the "charging document," that is, the complaint, indictment
or information.  If these documents are void or fatally defective,
there is no subject matter jurisdiction since they are the basis of
the court's jurisdiction.  When an accused party is indicted under
a not-yet-effective or unenacted statute, the charging documents is
void.

54.

Congress has no general power to enact police regualtions operation
within the territorial limits of a State.  **Slaughter-House Cases,**
83 U. S. 36; **United States v. Dewitt,** 76 U.S. 41; **Gibbons v. Ogden,**
22 U. S. 1; and it cannot take this power from the States or attempt
any supervision over the regulations of the States established under
this power, **Keller v. United States,** 213 U.S. 138.  The exercise of
the police power by a State is beyond interferences by, the Federal
Government.  See also, **People v. Godfrey,** 17 Johns 225 at 233 (N.Y.
1818); **United States v. Bevans,** 16 (3 Wheat) 336 (1818); **Adams v.
United States,** 319 U. S. 312 (1943). **Caha v. United States,** 152 U. S.
211, 215 (1894), Supreme Court authorities, which contain language
that leaves no room for misinterpretation of misapplication.

### UNPROMULGATED REGULATORY STATUTES

Defense counsel was ineffective by failing to raise that there
are no public implementing regulations in the Code of Federal Regul-
ations (CFR) for the Federal Statutory Provisions.under which the
Petitioner is charged.

///// - 26

57.

That, defense counsel failed ab initio to raise or challenge the
fact that the Federal Statutory Provisions under which the Petitioner
is charged are unenacted by Congress, unpromulgated in the Federal
Register and possess no public implementing authorities in the Federal
Code of Regulation.  The Petitioner would like the record to reflect
that the Federal Statutory Provisions under which he is charged, are
in fact **commercial regulatory statutes** which have not been promulgated
in the Federal Register or the Code of Federal Regulations, as re-
quired under **44 U.S.C. §1505, et seq.,** and  **5 U.S.C. §601.**  Therefore,
it is arguable that this court has jurisdiction to adjudicate sanctions
for violations of unpromulgated regulatory statutes.  The Petitioner
thus advances with supporting authorities that no documentation can
be shown that the enumerated subsections under which the accused party
is charged, have published regulations, thus, these Federal Statutory
Provisions **Title 18  U.S.C. §371 and 18 U.S.C. §2,** lack the force and
effect of law, when misapplied beyond parameters of Rule 54(c) - Acts
of Congress, of Federal Rule of Criminal Procedure.

58.                              .

In **Foley Brothers v. Filardo,** 336 U.S. 281 (1949), the high court
stated, "It is well established as a principle of law, that all federal
legislation applies only within the territorial jurisdiction of the
(federal) United States unless contrary intent appears."  In order
for contrary intent to be facilitated, delegations of authority and
implementing regulations must be published in the Federal Register.

59.

Fortunately, there is a readily available method for discerning
which Statutes at Large, and which statutes contained within the 50
Titles of the United States Code, possess either restricted application
or general applicability to the several States and the population at
large.  This method is through consulting the Parallel Tables of
Authority and Rules which begin at page 709 of the 1998 Index Volume
to the Code of Federal Regulations.  Its authority is located at 1
C.F.R. §8.5(a).                          .

60.

The Administrative Procedure Act, located at 5 U.S.C. §552, et. seq., and the Federal Register Act, located at 44 U.S.C. §1505 et. seq., provide the means for determining which statutes in any given Act of Congress are applicable, within federal areas, and which statutes have "general" applicability within the territories, enclaves, and insular possessions, belonging to the Federal United States. At §1505 **(a)(1) of Title 44 of the United States Code,** it is found that if a statute is not published in the Federal Register, the application of the statutory provision is restricted to federal agencies, or persons acting in their capacity as officers, agents or employees of the federal government.

61.

Positive Law is the irrefutable law of the United States of America, which has withstood the test of time. However, when federal statutory provisions are not duly and properly promulgated in accordance with the law, then such statutes lack the force of law, and may not be applie capriciously or arbitrarily.

62.

In **Hotch v. United States,** 212 F.2d 280 (9th Cir. 1954), at p.283 the court stated:

> " Under our system of law, no act is punishable as
> a crime unless it is specifically condemned by the
> Common Law or by statutory enactment of the Leg-
> islature **(22 C.J.S. Crim.Law, see 17).** Therefore,
> the Administrative Procedure Act and the Federal
> Register Act must be read as a part of every Con-
> gressional delegation of authority unless specifically
> excepted. Those acts require publication, irrespec-
> tive of actual notice, as a prerequisite to the
> "issuance" of a regulation making certain acts
> criminal. If certain acts have not been made crimes
> by duly enacted law, the knowledge of their
> administrative proscription cannot subject the in-
> formed person to criminal prosecution. While
> ignorance of the law is no defense, it is conversely
> true that a law which has not been duly enacted into
> positive law, is not a law general applicability and
> therefore, a person who does not comply with its pro-
> visions cannot be guilty of a crime."

63.

In **Wei v. Robinson**, 246 F.2d 739 (7th Cir. 1957) cert. den. 78 S.Ct. 144, 355 U.S. 879, the Supreme Court stated, "Contents of the Federal Register and th Code of Federal Regulations are **prima facie evidence of the original text and are required to be judicially noted.**" In **Wolfson v. United States**, 492 F.2d 1386, 204 Ct. Cl. 83 (1974). "When regulations are published in the Federal Register, they give legal notice of their contents to all who may be affected thereby." In **Schafer v. United States**, 229 F.2d 124, cert. den. 76 S.Ct. 78, 351 U.S. 931, the court stated, "The publication of a document in the Federal Register creates a rebuttable presumption of validity." **Norther States Power Co. v. Rural Electrification Administration**, 248 F.Sup. 616 (1965), the court stated, "Rules by which government agency of general applicability and published in accordance with the Federal Register Act have force and effect of Statute Law and are binding on those publishing them as well as the general public until such times they be repealed of modified. Fed. Reg. Act §1, et. seq., 44 U.S.C.A. §301 et seq.

64.

In **United States v. Mersky**, 361 U.S. 431, 438 (1960), the Supreme Court stated:

> "Once promulgated, these regulations called for by the statute itself have the force of law, and violation thereof incur criminal prosecutions just as if all the details have been incorporated into the Congressional language. The result is that neither the Statute nor the Regulation are complete without the other, and only together do they have any force in effect; therefore, the construction of one necessarily involves the construction of the other, and in the context of criminal prosecution, the rule of strict construction must be applied in the interpretation of an Administrative Regulation to which penal consequences attach under the Statute authorizing the promulgation of the regulation, as well as the construction of the statute."

65.

In **United States v. Reinis**, 794 F.2d 506 (9th Cir. 1986), the court stated, "An individual cannot be prosecuted for violating the "Act" unless he violates an implementing regulation." See also, **United**

States v. Two Hundred Thousand Dollars, 590 F.Supp. 846 (S.D. Fla.
1984), specifically stated at 1 C.F.R. §1, "All regulations must be
published in the Federal Register to have general applicability and
legal effect."  Regulation published by the Secretary at 26 C.F.R.
601-702(ii), acknowledge the effect of failure to publish by stating,
"Thus for example, any such matter which iposes an obligation and which
is not so published or incorporated by reference will not adversely
change or affect a persons rights."

66.

The Supreme Court stated in United States v. Welden, 377 U.S. 95
(1964), that, "Under 1 U.S.C. §204(A), which provides that the United
States Code established prima facie the laws of the United States and
that when Titles of the Code are enacted into positive law, the text
thereof is legal evidence of the law contained therein, the very mean-
ing of 'prima facie' is that the Code cannot prevail over the Statutes
at Large when the two are inconsistent.  If construction of a section
of the United States Code which has not been enacted into positive
law is necessary, recourse must be had in the Original Statutes them-
selves and a changed arrangement made by the codifier without the ap-
proval of Congress should be given no weight.  Stephan v. United States,
319 U.S. 423 (1943); Best Foods v. United States, 147 F.Supp. 749,
37 Cust. Ct. 1 (1956); Peart v. Motor Vessel Bering Explorer, 373
F. Supp. 927 (1974).

67.

This provides that when implementing regulations are at variance
with the statutory provisions of which are intended to promulgate
that they fail to give proper notice under the due process clauses
of the Federal Constitution of the 'Fair Notice Doctrine,' set out
under United States v. Nevers, 7 F.3d 59 (5th Cir. 1993).  Admin-
istrative regulations, in order to be valid, must also be consistent
with, and not contrary to, "The statute under which they are prom-
ulgated."  United States v. Larionoff, 431 U.S. 864, at 973, 97 S.Ct.
2150, at 2156, 53 L.Ed.2d 48 at 56.  "A regulation beyond the scope
of, or in harmony with, underlying legislation is a mere nullity."
Id. at 873 n.12, 97 S.Ct. at 2156, n.12,; Manhatton Gen. Equip. Co.
v. C.I.R., 297 U.S. at 134, Neel v. United States, 266 F.Supp., at
10.  To make this determination, it is necessary for the court to

square the regulations against the statute that it purports to im-
plement, comparing the sphere of authority of each. **Western Union
Teleg. Co. vs. F.C.C.**, 541 F.2d 345, 354 (3rd Cir. 1976) cert. den.
429 U.S. 1029 (1977). An Administrative Regulation must be reason-
ably related to advancing the purpose of the enabling legislation.
**Morning v. Family Publications Service, Inc.**, 411 U.S. 356, 369 (1973).
In the framework of criminal prosecution, unclarity in the statute
or a regulation issued thereunder is, enough to resolve doubts in
favor of the defendant. **United States v. Mersky, supra.**

## FATAL DEFECTS IN THE GOVERNMENT'S CHARGING INSTRUMENTS
### 68.

The defense counsel was ineffective by failing to raise or chal-
lenge the self-evident and self-declaring defects in the government's
charging instrument.                                    .

### 69.

The Petitioner argues that an indictment which fails to allege
all of the elements of the alleged offense is defective and must be
dismissed, where one of the elements is crucial and is in fact in sine
qua to the legitimate application of the subsequent charged offense.
The legitimate application and charging of **Title 18 U.S.C. §371** and
**18 U.S.C. §2** must be connected to an alleged violation of the Fed-
eral Interstate Commerce Statute, otherwise Federal Subject Matter
Jurisdiction is missing. See, **United States v. Pupo**, 841 F.2d 1235,
the Petitioner argues that an indictment fails to appraise the accused
party of what he must be prepared to defend against. Accordingly,
an allegation of Interstate Commerce is jurisdiction and as such is
an essential element in apprising the Petitioner of the Grand Jury's
authority to indict under **Title 18 §371** and 18 U.S.C. §2, see, United
States v. Young, 730 F.2d at 224, (th particular predicate for jur-
isdiction is essential element of offense); United States v. McCray,
65 F.2d 664, 678, 679 (5th Cir. 1982). The Constitutional Rights of
an accused are violated when modification, at trial or by Court of
Appeals acts to broaden the charge contained in the indictment, such
modification contradict the very purpose of the Fifth Amendment Grand
Jury requirement. See, **United States v. Stirone**, 361 U.S. 212, (ex-

pressing similar views).  The failure of the government to include
in the indictment any charge that the Petitioner's conduct affected
Interstate or Intra-state, or any commerce was not cured by the cit-
ation of the Statutes.  In the sufficiency of an indictment it is
the statement of facts in the pleading rather than the Statutory Cita-
tion that is controlling.  See, **United States v. Wuco**, 535 F.2d 1225
(9th Cir. 1976) cert. den. 429 U.S. 978, 97 S.Ct. 488, 50 L.Ed.2d 586
(1976).  It is elementary that every ingredient of the crime must be
charged in the bill, with a general reference to the provisions of
the statute being  insufficient. See, **Hale v. United States**, 89 F.2d
(4th Cir.) and **United States v. Berlin**, 472 F.2d 1002, 1007 (2nd Cir.
1973); also **United States v. Beard** 414 F.2d 1014, 1017 (3rd. Cir.)
This indictment under **Title 18 U.S.C. §371** and 18 U.S.C. §2, fails
to allege a nexus between Petitioner's conduct and Interstate Commerce
in dealing with an indictment where no alleged commerce allegation
is made.  The Petitioner argues this court should hold that lack of
commerce allegation in the indictment, preclude it from considering
whether a conviction under **Title 18 U.S.C. §371** and 18 U.S.C. §2, can
be sustained even if the government alleged and proved that the offense
had a nexus to commerce.  See, **United States v. Lopez**, at 2 F.3d 1342,
(the holding of the 5th Court of Appeals).

70.

The Federal Government failure to establish proof of other evidence
of jurisdiction or ownership over each and every geographic location
in which the alleged criminal activities took place divested the court
of jurisdiction over the subject matter and **mandates reversal**.  Where
the lands were never ceded over to the United States, and the location
which lie within the territorial boundaries of the states and not the
Federal Government.  Then the Federal Government lacks the  jurisdiction
over any criminal activities which lies therein.  Thus, the government
view's that **Title 18 U.S.C. §371** and 18 U.S.C. §2, can be used and
applied to all crimes that occur any place or in any geographic loca-
tion, even though the statute lacks a commerce nexus, and the govern-
ment's failure to allege any effect on commerce or other basis for
jurisdiction, and not withstanding the states sovereign jurisdiction
over its territory, are contrary to the Constitution of the United
States.  Such a position would ask that this Court to infer that Con-
gressional Laws may be converted to genreal police power and authority

///// - ::

without statutory or Constitutional support which only the States may
properly possess.

71.

It is a firmly established and accepted fact that the Federal
Government's power, authority, and jurisdiction does not extend beyond
the boundaries and parameters of the embodiment of the Federal Govern-
ment itself, i.e. "territory, lands, property owned by the Federal
Government over which jurisdiction has been ceded by the State Legis-
lature." However, the Federal Government does not have the power, nor
does the Constitution grant the power to punish persons for various
other crimes over which jurisdiction is retained by the States.
Preventing and prosecuting such various crimes is much the business
of the States than the Federal Government. **Arizona v. Manypenny**, 451
U.S. 232, 101 S.Ct. 1657. It is of the utmost importance and relevance
to note, retain, and embellish within the mind that the territorial
jurisdiction of the United States is limited to the Federal Enclave.
**United States v. Fessler**, 781 F.2d 384, 386 (1986). In the instant
matter, the facts and offense alleged do not conform with or meet any
jurisdiction requirements described within and in the foregoing.
Thus, without proper jurisdiction of the subject matter, any prose-
cution or continuation of this matter is unlawful at its inception
and duration. To bring the offenses within the jurisdiction of the
Federal Courts, it must have been committed out of the jurisdiction
of any State; it is not the offenses committed, but rather the place
in which the offense is committed. **People v. Godfrey**, 17 Johns 225
at 233. In the doctrine of "Lex Loci" or the "Law of the place" de-
termines that standard of conduct and governs as to matters within
the right of action. See, **Gray v. Blight**, 112 F.2d 696. While no
one disputes the proposition that "the Constitution created a Federal
Government of limited powers," **Gregory v. Ascroft**, 501 U.S. 452 458,
115 L.Ed.2d 410, 111 S.Ct. 2395 (1991); and that while the Tenth
Amendment makes explicit "that the powers not delegated to the United
States by the Constitution nor prohibited by it to the States, are
reserved to the States respective, or to the people."

72.

The argument is the division of authority between the State and
Federal Government and the government's jurisdiction in sustaining
convictions under the Federal Statutory Provisions in which the Pet-
itioner is charged **Title 18 U.S.C.§371 and 18 U.S.C. §2**, the government'
broader reading of these statutes would make a major inroad into the
domain left to the States.  If power is delegated to Congress in the
Constitution (such as those enumerated), the Tenth Amendment expressly
disclaims any reservation of that power to the States.  If a power
is an attribute of the States sovereignty (such as this one we are
arguing), reserved by the Congress.  See, **United States v. Oregon**,
366 U.S. 643, 649, 6 L.Ed.2d 575, 81 S.Ct. 1278 (1961).

73.

It is in this sense that the Tenth Amendment states but a truism
"that all is retained which has not been surrendered."  **United States
v. Darby**, 312 U.S. 10, 124, 85 L.Ed. 609, 61 S.Ct. 451, 132 ARL 1430
(1941).  As Justice Story put it, "... this amendment is a mere affirm-
ation of what, upon any just reasoning is a necessary rule of
interpreting the Constitution.  Being an instrument of limited and
enumerated power, it follows irresistable, that what is not conferred
is withheld and belongs to the States authority," 3.j. Story Com-
mentaries on the Constitution of the United states 752 (1833).  The
argument this Petitioner brings to this Court is the Federal Government
did not have jurisdiction over the geopgraphical location wherein the
alleged prohibitive activity took place, in land, which were never
ceded to the United States, the interstate commercial element becomes
essential to establish jurisdiction and prove every element of the
offense.  Applying the rational of the Supreme Court in **United States
v. Mechanik**, 475 U.S. 66, 70, 106, S.Ct. 938, 941, 89 L.Ed.2d 50 (1989),
and **United States v. Hooker**, 841 F.2d 1225, like the decision in Hooker
cannot be applied here because the court had no jurisdiction to try
Petitioner on a count which failed to expressly allege an effect on
inter or intra-state commerce.  Jurisdiction is lacking if the indict-
ment did not allege a federal crime, by means of a connection with
interstate commerce.  This action by the prosecutor certainly deprive

the Petitioner the basic protection, which the guaranty of the inter-
vention of a Grand Jury was designed to secure.  For the defendant/
Petitioner could then be convicted on the basis of charges not found
by and perhaps not even presented to the Grand Jury, which indicted
him.  See, Orfield Criminal Procedure from Arrest to Appeal, 243.
Petitioner now asserts his Fifth Amendment Right of Due Process, in
arguing that he was never indicted by his Grand Jury for effecting
and commerce!  Thus, failure to present this element or state it in
the pleading of the indictment, preclude the Appellate Court from sus-
taining his conviction.  For all these above reasons, Petitioner asks
this Court to look carefully to the Constitution and the cited statutes,
Petitioner asks this Court to invoke the doctrine of State Decsisi:
when a court has once laid done a principle of law applicable to a
certain state of facts it will adhere to that principle, and apply
it to all future cases, where facts are substantially the same regard-
less of whether the parties are the same.  The doctrine of Stare Decsisi
provides the means by which courts assure that the law will not merely
change erratically but will develop in principle and intelligent
fashion; the doctrine permits society to presume the bedrock principles
are found in law rather than in the proclivities of individuals, and
thereby contributes to the integrity of our Constitutional system of
government in appearance and in fact.  Petitioner now invokes the doc-
trine of **Stare Decisis** in his argument herein, "Any departure from
the doctrine of Stare Decisis demands special justification."  Arizona
v. **Rumsey,** 467 U.S. 203, 212, 81 L.Ed.2d 164, 104 S.Ct. 2305 (1984);
also see, **Olson v. Kennedy,** 456 U.S. 667, 691 n. 34, 72 L.Ed.2d 416,
102 S.Ct. 2083 (1982).  Stevens J. concurring in judgment.  Title **18**
U.S.C. **§371** and 18 U.S.C. §2, if Congress wanted these statutes to
be used outside of their territorial jurisdiction, such as anywhere
or any place then it would have drafted the needed provision, which
certainly would have included interstate commerce nexus that is required.
"Federal criminal statute intended to be enforced within the States
exceeds Congress Commerce Clause authority."  To uphold the government's
arguments  and it's contention that it can bring criminal charges  for

crimes committed within a State is to convert Congressional authority
into police power, which is only within the authority of the States.
See, United States v. Lopez, No. 93-1260, (decided April 26, 1995).
In McCullough v. Maryland, 4 Wheat 316 (1819), the Federal Government
had to acknowledge that it can only exercise power granted to it.
The enumerated presupposes something not enumerated. See, Gibbons
v. Ogden, supra. at 195. The Constitution mandates that Congress can-
not give itself plenary police powers over the State territories.
Congress must operate within the framework of what the Supreme Court
defines the law to be. See, Marbury v. Madison, 1 Cranch 137.

74.

That, defense counsel failed at the sentencing of the Petitioner
to raise or challenge that §3551 of Title 18 applies only to those
who according to the language of the statutes, supra had been found
guilty of any offense described in the Federal Statute ...other than
an Act of Congress applicable exclusively in the District of Columbia.
Acts of Congress (Federal Law) are defined and circumscribed under
Rule 54(c) Federal Rules of Criminal Procedure. Implementing regulation
for 18 U.S.C. §3551 are at variance with their application in the in-
stant cause. Where the instant matter is concerned, the accused
committed no violation of any properly enacted and duly promulgated
federal law within the legislative jurisdiction of the Federal United
States, nor within the parameters defined under the implementing reg-
ulation for the Federal Sentencing Provisions, thus, the Sentencing
Provisions set out under Parallel Tables of Authorities and Rules 1997
Edit. at page 733, it is found that the implementing regulations for
18 U.S.C. §3551 are set out under 43 C.F.R. 9260 Public Lands, Alaska,
36 C.F.R. 242-subsistence management regulations for public lands Alaska
and 50 C.F.R. 100, (same as 36 C.F.R. 242). Where the instant matter
is concerned the accused committed no violation properly enacted and/or
duly promulgated federal law within the legislative jurisdiction of
the Federal United States, nor within the parameters defined under
the implementing regulations provisions, thus, the sentencing provisions
set out under 18 U.S.C. §3551 do not apply to the accused.

75.

The court will find that the statutory provisions under which
the U.S. District Court imposed the sentence against the accused (18
U.S.C. §3551) apply not to the Acts of Congress, which are applicable
only in the District of Columbia.  See, Rule 54(c).

76.

It may further be shown that the statutory provision, 18 U.S.C.
§3551, is a variance with its published implementing, thereby creating
ambiguity as to its lawful authority and applicability over the accused.

77.

An invalid unconstitutional, or non-existent statute affects the
validity of the "charging document," that is, the complaint, indict-
ment of information.  If these documents are void or fatally defective,
there is no subject matter jurisdiction since they are the basis of
the court's jurisdiction; when an accused party is indicted under a
not yet effective or unenacted statute, the charging document is
void.

78.

The indictment or complaint can be invalid if it is not constructed
in the particular mode or form prescribed by the Constitution or
Statute (42 C.J.S., "Indictments and Information," §1 page. 833).
But it also can be defective and void when it charges a violation of
a law, and that law is void, unconstitutional, unenacted, or misapplied
if the charging document is void, the subject matter of a court does
not exist.  The want of a sufficient affidavit, complaint, or inform-
ation goes to the jurisdiction of the court, and renders all pro-
ceedings prior to the filing of a proper instrument void ab initio.
22 Corpus Juris Secundum, "Criminal Law," §334 pg. 390.

79.

One way in which a complaint, or indictment fails to charge a crime,
is by its failure to have the charge based upon a valid or duly enacted
law.  Complaints or indictments which cite invalid laws, or incomplete
law, or non-existent law are regarded as being invalid on their case,
thus fatally defective.

80.

The crux then of this whole issue of jurisdiction revolves around
law, that is , the law claimed to be violated.  If one is subject to

law, they are then under the jurisdiction of some authority.  If a
crime is alleged but there is no law to form the basis of that crime,
there is no jurisdiction to try and sentence one even though they are
subject to the legislative body and the court.  There has to be a law,
a valid law, for subject matter jurisdiction to exist.  Laws which
lack an enacting clause are not laws of the legislative body to which
we are constitutionally subject.  Thus, if a complaint or information
charges one with a violation of a law which has no enacting clause,
then no valid law cited.  If it cites no valid law then the complaint
charges no crime, and the court has no subject matter jurisdiction
to try the accused party.

> [N]o authority need to be cited for the proposition that,
> when a court lacks jurisdiction, any judgment by it is
> void and unenforceable...and without any force or effect
> whatsoever.
> **Hooker v. Roles**, 346 F.2d 285, 286 (1965).

81.

A judge or court may be in a legal sense immune from any claims
that it is guilty of wrong because of its improper exercise of jur-
isdiction.  However, it has no such protection where it lacks juris-
diction and the issue has been raised and asserted.  When the lack
of jurisdiction has been shown, a judgment rendered is not only bold,
but is also usurpation.  Jurisdiction is a fundamental prerequisite,
and an usurpation thereof is a nullity.  **22 Corpus Juris Secundum,**
**"Criminal Law," §150** pg. 183.  The excessive exercise of authority
has reference to want of power over the subject matter, the result
is void when challenged directly or collaterally.  If it has refer-
ence merely to the judicial method of the exercise of power, the result
is binding upon the parties to the litigation till reversed.  The
former is usurpation; the latter error in judgment.  **Voorhees v. The**
**Bank of the United States,** 35 U.S. 449, 474-75 (1836), the line which
separates error in judgment from the usurpation of power is very definite.

82.

This Honorable Court must be compelled to find as a matter of law, that the Petitioner is in custody and detained of his liberty, in violation of the Constitution of the United States of America, where the foregoing and the court's own record support that the Federal Government lacked Federal Legislature jurisdiction over the locus in quo, where the purported prohibitive acts were committed; and,

83.

That the government lacked Federal Subject Matter jurisdiction where no prohibitive acts or conduct of the Petitioner moved beyond the borders of the sovereign state, nor was the Petitioner, indicted via the government charging instrument, for an alleged violation of the Federal Interstate Commerce Statute, thus, the Federal Government **lacked Federal Subject Matter jurisdiction**, a sine qua non to federal prosecution of the offense alleged against the Petitioner.

## CONCLUSION

84.

Where the instant cause is concerned, the Federal Statutory Provision under which the Petitioner is imprisoned and detained of his LIBERTY, have not been promulgated by Congress in the Federal Register (44 U.S.C. 81505), nor do such statutory provisions possess published implementing regulations in the Code of Federal Regulations, nor is there to be found an Amendment to the Constitution, ratified by the several sovereign states, to provide for nationwide application of these Federal Stattuory Provisions.

85.

The Constitution of the United States of America, provides that it is the Congress of the United States who has the authority to create and enact Federal Laws.

86.

The Statutory Provisions under which the Petitioner is charged do not have implementing regulations in the Code of Federal Regulations; the section fails under 62 Statutes at Large, which have not

//'// - 39

been promulgated in the Federal Register by Congress, and fails to possess any published implementing regulations in the Code of Federal Regulation.

87.

There is no Amendment to the Constitution ratified by three-Fourths of the sovereign states to provide for nationwide jurisdiction and application of which the party is charged.

88.

The undersigned commited no violations of the Federal Interstate Commerce Statute, nor do the Federal Statutory Provisions under which he is indicted contain language which could interpose a comerce nexus. Thus, there is no showing of Federal Subject Matter Jurisdiction.

89.

The locus in quo where the alleged prohibitive acts of the under-signed took place is a geopgraphical location not within the legislative territorial or admiralty jurisdiction of the Federal Government.

**WHEREFORE,** the court should be compelled to find as a matter of law that the Petitioner committed no prohibitive acts within the legis-lative, Territorial or Admiralty jurisdiction of the Federal United States, or within the reach of interstate commerce clause statute, therefore the Petitioner is unlawfully incarcerated and detained in violation of his secured Constitutional rights by way of judgment of the Court in want of jurisdiction, and the denial of the affective assistance of counsel. The Petitioner must therefore, by law, be re-leased and discharged from Federal custody forthwith.

Date: ___MAy  7_____, 2008.        Respectfully submitted:

///// - 40